R. W. FANN, ADMINISTRATOR OF M. E. FANN, *v.* NORTH CAROLINA
RAILROAD COMPANY.

(Filed 3 May, 1911.)

1. **Executors and Administrators—Clerk's Appointment—Collateral Attack.**

When acting within their jurisdiction and within the scope of their powers, the decrees of probate courts should be considered and dealt with as orders and decrees of courts of general jurisdiction; and where the jurisdiction over the subject-matter has been properly acquired, these orders and decrees are not, as a rule, subject to collateral attack.

2. **Same.**

It appearing that administrator of decedent had been appointed by the clerk, objection cannot be taken to the legality of his appointment upon the question of residence of such administrator, etc. (Revisal, sec. 16), in an action for damages for his negligent killing, for the error, if any committed, must be corrected by proceedings instituted directly for the purpose.

3. **Same—Independent Action—Assets.**

A right of action to recover damages for the wrongful killing of an intestate constitutes assets; and it appearing that the appointment of the administrator was made in the county wherein the intestate resided and was domiciled at the time of his death, the clerk had full jurisdiction, and the letters of administration are not open to attack in the present suit.

4. **Executors and Administrators — Clerk's Appointment—Non-resident—Change of Domicile—Intent Evidence.**

In an action for damages for the wrongful killing of plaintiff's intestate, when objection is made to the clerk's appointment of the administration on the ground of non-residence, evidence is relevant and competent which tends to show that the administrator was engaged in business in the county of his appointment, had property therein, and was a resident thereof, but had gone temporarily to another county in search of employment, with intent to return without changing his residence.

5. **Railroads — "Look and Listen" — Defendant's Negligence—Contributory Negligence — Ordinances — Evidence — Questions for Jury.**

At a public crossing where the defendant had four tracks, two for northbound and two for southbound trains, the plaintiff's intestate was killed by being run over by a northbound train while

awaiting the passing of a southbound long freight train. A curve in the track just below shut off the view to some extent, and the passing freight was making a noise, which naturally interfered with the intestate's hearing the approach of the train that caused the injury. There was evidence tending to show that the speed of the latter train exceeded that allowed by a valid ordinance of the city, and that it had failed to give proper signals or warnings of its approach; also that an ordinance prohibited trains passing each other at the public crossing. On these facts, or evidence tending to establish them, the question of contributory negligence on the part of intestate was for the jury.

APPEAL from *Daniels, J.,* at the January Term, 1911, of GUILFORD.

Civil action for death of intestate caused by alleged negligence on part of defendant company, at January Term, 1911, of the Superior Court of Guilford County. It appeared in evidence that on or about 5 June, 1909, in the city of Greensboro, the intestate was endeavoring to cross the tracks of defendant company on Jackson street, a public crossing, and was run down and killed by a train going north at the time, being the third or fourth section of No. 36, a train hauling fruit to northern markets. There were four tracks at the crossing. The first two, in the direction from which intestate was approaching, being sidetracks parallel to the main tracks, the third was the main track for trains going north, and the fourth was the main track for trains going south over defendant's road; that when intestate entered on crossing there was a long freight train of thirty or forty cars going south which was passing over the crossing at the time, and intestate having passed over the second sidetrack, was standing on the main track leading north waiting for the freight going south to pass. When in that position the third or fourth section of a fruit train going north ran over and killed intestate. There was evidence tending to show that the freight train going south was making quite a noise at the time; that the tracks curved just below the crossing, and the approach from the south was to some extent obscured by the freight train, and that no signal was given by the fruit train which killed intestate except several signal whistles when in twenty-five steps of deceased, and the train was running between

twenty or thirty miles an hour, faster than ordinary freight trains. Plaintiff introduced two ordinances of the city of Greensboro in force at the time as follows:

"Section 282. That it shall be unlawful for any railroad company to allow two engines or trains to cross any street in the city at the same time from opposite directions."

"Section 284. That no railroad engine or train shall run or be propelled at a greater speed than twenty miles an hour within the city."

An issue having been raised as to the legality of plaintiff's appointment on the ground that he was a non-resident, there was testimony offered on part of plaintiff to the effect that he had gone to Danville in the panic of 1898 to get work temporarily, and continued in his employment there as cotton mill hand until November, 1910; that he could not at the time obtain employment in Greensboro, and his purpose in going to Danville was to stay there temporarily and try and save some money to return to the bakery business in Greensboro; that he left his property in Greensboro with a sister who lived there, a bureau, trunk, chairs and some clothing and a horse and wagon he had used in the bakery business and was keeping for like work when he was able to resume that business, and that during his stay in Danville he returned to Greensboro every month or so, remaining at one time as much as six weeks. On this point plaintiff testified:

Q. Did you go to Virginia with intent to leave North Carolina, or did you consider that your home? Ans. This was my home. I just went there to work; my intention was to come back; my home was here.

Q. Did you go once with the intention of permanently remaining there? Ans. Just temporarily remaining there.

Q. For what purpose? Ans. To save up money to start a bakery.

This evidence as to the intent of plaintiff in leaving North Carolina, and of his purpose to return was admitted over defendant's objection, and exception was duly noted. There was evidence on part of defendant company that the train was only going ten or twelve miles an hour at the time, and all the usual

signals were given; that the vision of engineer was obscured by reason of a curve below the crossing. As soon as intestate was discovered on the track, additional signals were given, emergency brakes applied and everything possible done to avoid the result.

The court, under a full, clear and comprehensive charge, submitted the questions raised to the jury under the following issues:

1. Is the plaintiff the legally appointed and duly qualified administrator of M. E. Fann? Answer: Yes.

2. Was the intestate of the plaintiff killed by the negligence of the lessee of the defendant as alleged in the complaint? Answer: Yes.

3. Did the intestate of the plaintiff contribute to his death by his own negligence? Answer: Yes.

4. What damage is the plaintiff entitled to recover? Answer: One thousand dollars ($1,000).

Judgment on the verdict for plaintiff. Defendants excepted and appealed, assigning for error: 1. The ruling of the court on the question of evidence. 2. That the plaintiff should have been nonsuited for the reason chiefly that on the evidence intestate was guilty of contributory negligence.

*John A. Barringer and T. H. Calvert for plaintiff.*
*Wilson & Ferguson for defendant.*

HOKE, J., after stating the case. In this day and time and under our present system, it seems to be generally conceded that the decrees of probate courts, when acting within the scope of their powers, should be considered and dealt with as orders and decrees of courts of general jurisdiction, and where jurisdiction over the subject-matter of inquiry has been properly acquired that these orders and decrees are not as a rule subject to collateral attack. The facts very generally recognized as jurisdictional are stated, in sec. 16 of our Revisal, to be that there must be a decedent; that he died domiciled in the county of the clerk where application is made, or that, having his domicile out of this State, he died out of the State, leaving assets in such county or assets have thereafter come into such county; having

his domicile out of the State, he died in the county of such clerk, leaving assets anywhere in the State or assets have thereafter come into the State, and where, on application for letters of administration, these facts appear of record, the question of the qualifications of the court's appointee cannot be collaterally assailed. That is one of the very questions referred to him for decision. But if a person has been selected contrary to the prevailing rules of law, the error must be corrected by proceedings instituted directly for the purpose. *Hall v. R. R.,* 146 N. C., p. 345; *Springer v. Shavender,* 118 N. C., p. 33; *Lyle v. Siler,* 103 N. C., p. 261; *Moore and wife v. Eure,* 101 N. C., p. 11; *London v. R. R.,* 88 N. C., p. 585, and generally on the subject see *Dobler v. Strobler,* 9 N. Dakota, p. 104, with notes by the editor in 81 Amer. St. Rep., pp. 530-535; Croswell on Exrs. & Admrs., p. 19 *et seq.* In the present case the deceased was killed in Greensboro, N. C., where he resided at the time and had his domicile. The cause of action is of itself assets. *Vance v. R. R.,* 138 N. C., p. 460. The clerk, therefore, had full jurisdiction and the letters of administration are not open to collateral attack in the present suit. The question, however, can hardly be said to arise in this case, for, under a correct charge, the jury have determined that the plaintiff was a resident of the State at the time of the appointment, and the evidence offered by plaintiff, and objected to by defendant, was clearly competent and directly relevant to the issue. *Watson v. R. R.,* 152 N. C., p. 215. Approaching then the principal question presented, this Court, in *Cooper's case,* 140 N. C., pp. 209-221, endeavored to lay down certain general-rules, applicable to injuries at railroad crossings as fair deductions from the cases considered, as follows:

"(1) That a traveler on the highway, before crossing a railroad track, as a general rule, is required to look and listen to ascertain whether a train is approaching; and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty.

"(2) That where the view is unobstructed, a traveler, who attempts to cross a railroad track under ordinary and usual conditions without first looking, when by doing so he could note

the approach of a train in time to save himself by reasonable effort, is guilty of contributory negligence.

"(3) That where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter on a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence.

"(4) There may be certain qualifying facts and conditions which so complicate the question of contributory negligence that it becomes one for the jury, even though there has been a failure to look or listen, and a traveler may, in exceptional instances, be relieved of these duties altogether, as when gates are open or signals given by watchman, and the traveler enters on the crossing reasonably relying upon the assurance of safety."

And in another case, at same term, *Sherrill v. R. R.,* 140 N. C., p. 252, applying the general rule contained in the fourth clause, it was held, among other things: "Negligence having first been established, facts and attendant circumstances may so qualify the obligation to look and listen as to require the question of contributory negligence to be submitted to the jury, and in some instances the obligation to look and listen may be altogether removed." And the facts relevant are very correctly embodied in the fourth head note of the case as follows: "Where the testimony of the plaintiff tended to show that his duties by contract with the defendant railroad caused him to work almost on the track and frequently required him to be upon and across it, and that while so engaged he was run over by an engine of the defendant which had come upon him without any warning, and which warning was required both by the custom and rules of the railroad, and that he had just looked and listened both ways, and the way then appeared clear. *Held,* that a nonsuit was erroneous, as the question of contributory negligence must be left to the jury to determine under proper instructions." And the Court, in its opinion, said, quoting with approval from *Rodrian's case,* 125 N. Y., p. 526: "But where one has looked for an approaching train it would not necessarily follow as a

rule of law that he was remediless because he did not look at
the precise place and time when and where looking would have
been of the most advantage." Again, in *Morrow's case,* 146
N. C., p. 14, the same principle was illustrated and applied, the
Court holding that: "It was not error in the court below, upon
the question of contributory negligence, to refuse a motion as of
nonsuit at the close of the evidence which tended to show that,
after waiting at the railroad crossing on a public highway for
about five minutes for defendant's freight train to pass, the
plaintiff immediately proceeded to cross and was struck by a
passenger train of defendant going in an opposite direction to
the freight; that he did not know of the approach of the passen-
ger train, though he had looked and listened; that the noise and
smoke of the freight train, and it being a dark and cloudy even-
ing, about 5 o'clock, with a fog arising from the ground, covered
with sleet, and there being no lights, prevented him from so
doing." And like ruling was made in *Inman's case,* 149 N. C.,
p. 123, the relevant facts and decision in the case being stated
as follows:

"1. While a person who had voluntarily gone on a railroad
track, where the view was unobstructed, and failed to look and
listen, cannot recover damages for an injury which would have
been avoided by his having done so, when the view is obstructed
or other existing facts tend to complicate the matter, the ques-
tion of contributory negligence may become one for the jury.

"2. Where there is evidence tending to show that a railroad
company has several tracks in a city over which the plaintiff
usually went in going to and from his work, and that the view
of the track was obstructed, and plaintiff, having listened for
warnings he had a right to expect, but which were not given,
stepped upon the track and was injured by defendant's train
running at a much greater speed than allowed by the town ordi-
nance, and which was unsafe at the place indicated, the question
of contributory negligence is properly submitted to the jury.

"3. When there is a town ordinance preventing the blowing
of locomotive whistles within its limits, the bell should be rung
continuously where there are numerous tracks and the conditions

and surroundings render the running of trains continuously dangerous to pedestrians."

The same position has been reaffirmed and applied in a case at the present term, *Wolfe v. R. R.,* where a watchman at a crossing was run on and injured by an engine which gave no signal of its approach, and when the watchman crossing the track in the discharge of his duty was engaged at the time in the effort to prevent a traveler from entering on the crossing under circumstances threatening danger. An application of these authorities and the principle upon which they rest to the facts presented fully support the ruling of his Honor below in submitting the question of contributory negligence to the jury. There was evidence on the part of plaintiff tending to show that at the precise time of the injury the plaintiff was standing on the main track for trains going north while a long freight train of defendant company was on the crossing moving south on the main track just ahead. A curve in the track, just below, shut off the view to some extent. The noise of the passing train naturally interfered with his hearing when he was run over and killed by the third or fourth section of a fast freight train carrying fruit to the Northern markets. There was evidence also on part of plaintiff to the effect that this train was running at a greater rate of speed than allowed by the city ordinance, and that no signals of its approach were given except the warning emergency blow when in twenty-five steps of intestate, and an ordinance of the city was also in evidence which prohibited this train from entering on the crossing at all till the freight train on the other track had crossed. In *Inman's case, supra,* and in *Norton's case,* the existence of a city ordinance, directly bearing on the occurrence, was allowed much weight, the principle being stated in *Norton's case* as follows: "A city ordinance regulating the rate of speed of a railway train is presumably passed for the protection of the people, and when within the scope of the city charter has the force and effect of law, and a citizen has the right to expect that it will be respected and obeyed by the railroad corporation."

Under the circumstances, as stated, or evidence tending to establish them, the court, imposing on the intestate the duty of

looking and listening for the approach of trains, and being careful for his own safety, properly submitted the question of contributory negligence to the jury, and there is no error in the charge giving the defendant any just ground of complaint. We have quoted from our decisions bearing on the question more at length by reason of a suggestion in argument, at the present term, that they had been modified to some extent by later decisions of the Court, notably in *Mitchell's case,* 153 N. C., p. 116, and *Coleman's case,* 153 N. C., p. 322, but there is no conflict in the cases when properly understood, and as applied to the facts existent in each nor any change in the controlling principle. Adverting again to the third rule deduced from the authorities in *Cooper's case:* "That where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter upon a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence." The same was applied in *Inman's case,* where a pedestrian, endeavoring to pass over a public crossing and having his view obstructed, stopped and listened for the accustomed signals, and hearing none he stepped from behind the car on to the track and was run over and struck by an engine which approached without any warning and at a greater rate of speed than allowed by the ordinance. There were "two steps" for him to walk after he came into view of the track, but the case was submitted to the jury, and in *Norton's case, supra,* the fact appeared that the claimant had his view obstructed, had listened for signals and was misled to his injury by the failure of defendant to give same. It may be well to note that these claimants were not relieved of the duty of properly caring for their own safety as a matter of law, but it was held only that the facts and circumstances attendant on the occurrence so qualified the obligation that the question of their conduct and its effect should be submitted to the jury. In *Coleman's case* the plaintiff testified, it is true, that he had both looked and listened, but he also stated that he had done this some distance back from the crossing where

his view was obstructed by houses, and that he afterwards, in daylight, drove in a buggy "with curtains buttoned down both sides and back across an open space of sixty-five feet, affording full opportunity to see down the track the way the train came for three-fourths of a mile and without any effort to further look or listen." There was nothing here to qualify his obligation to care for his own safety, and recovery was denied. In *Mitchell's case* a deaf and dumb negro, familiar with the schedule of the trains and a frequenter of the train yards, walking towards the crossing just at the time when a train was scheduled to arrive, stopped where a box-car obstructed his view and then, with eleven feet of clear space, walked across the track without looking just as a fast train approached and was struck and permanently injured. There was no evidence that plaintiff had listened for signals, and hearing none was induced to venture on the track for that reason, as in *Inman's case* and in *Norton's case*. There was nothing shown to distract his attention. The fact that he was deaf should have quickened his obligation to look more carefully, as held in *Foy v. Winston,* 126 N. C., p. 381. Nothing appeared therefore to qualify the duty upon him to care for his own safety, and recovery in that case was also denied. As heretofore stated, on the precise facts existent in each case, our decisions are in accord on the question presented, and when properly applied sustain the trial judge in submitting the question of contributory negligence to the jury. There is no error and the judgment is therefore affirmed.

No error.