STEPHEN DAVIDSON, ADMINISTRATOR OF LACEY DAVIDSON, v.
SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 1 December, 1915.)

1. **Railroads—Pedestrians—"Stop, Look and Listen"—Contributory Negligence.**
The principle that it is the duty of a traveler, whether on foot or otherwise, to stop, look and listen for approaching trains before entering upon a railroad crossing, and that his failure to do so is negligence which will bar his recovery for injuries received from passing trains, if it is the proximate cause thereof or of resulting death, is not always an absolute one, and may be qualified by attending circumstances.

2. **Same—Special Conditions—Trials—Evidence—Questions for Jury.**
Where an injury resulting in death is received by a pedestrian who has failed to look and listen before entering upon a railroad track at a public crossing, attributable to his having been struck by a passing train, and there is evidence tending to show that the track in question was a spur—crossing the street from the main line; that the track was covered from the effect of travel on the street, except the rails, and only one line of these showed above the level of the ground, and that only slightly; that the intestate, a stranger, was killed by a train from the main line running suddenly upon the spur-track at an unusual time of day, without any warning of its approach and without proper lookout to give notice thereof: *Held,* the question of the intestate's contributory negligence in failing to stop, look and listen before entering upon the railroad should be submitted to the jury, and such will not bar the action as a matter of law.

APPEAL by defendant from *Webb, J.,* at September Term, 1915, of MECKLENBURG.

Action to recover damages for the wrongful death of the plaintiff's intestate, caused, as the plaintiff alleges, by the negligence of the defendant. The defendant denies that it was guilty of negligence and pleads that the death of the intestate was caused by her own contributory negligence.

The plaintiff introduced the following evidence:

J. A. Overcash, a witness for the plaintiff, testified: "The main line of the defendant, extending from Charlotte to Shelby, runs about parallel to West Eleventh Street, and within thirty feet of it. There is a spur-track, extending from this main line of railway into the Ice and Fuel Company's plant, and then further on, in a northerly direction, to the Buckeye Oil plant, as is shown on blue-print. This spur-track crosses West Eleventh Street, and enters the yard of the ice plant through two large gates—the ice plant being otherwise fenced up.

"For the last five years, since my shop has been located where it now is, a great many people, chiefly colored, travel West Eleventh Street, principally along the path located next to the fence of the ice company's plant, and particularly about six or seven o'clock in the morning, when I have seen as many as seventy-five people traveling along said street.

"At the time plaintiff's intestate was killed, the inside rail on the curve of this spur-line, where it crosses Eleventh Street, was, and has been since I have been there, level with the ground. You can see the far rail, which is raised the least bit above the ground, the cross-ties being covered completely up. Wagons, automobiles, and buggies run back and forth along West Eleventh Street across this spur-track. There were no signs up at this point indicating that it was a railroad crossing. Where the spur-track leaves the main line there is an embankment about three and one-half feet high, and at the time plaintiff's intestate was killed there was grass there. Plaintiff's intestate was killed about seven o'clock a. m., in August, 1912. I was going to work that Monday morning, and the chief engineer and I had done some work on the gates of the ice company plant, which work I had never seen before, and I had stopped at the gates to look at the job we had done. I was never thinking about the train. I was standing there, looking at the work, when I heard somebody holler, 'Look out, there!' It was to my left, and the train was backing in on me. I jumped off the track and I saw this woman coming, walking right along by the fence at the same time. I saw her walk into the train; saw her go down, and the wheels pass over her. When I first saw her she was just a little piece from the track, going to cross it. I did not see her walk on the track. Heard no bell rung, or whistle blown; train was making no fuss; first I knew of its coming was when the watchman hollered at me. I was standing right in the gates at that time. There was a man on top of the leading car as the train was being backed on the spur-line—near the middle of the

car, and on the right side of it as it was being backed. Don't know whether he could have seen the woman from his position or not, as she was down at the left corner of the car. When she was hit I was about fifteen feet up the track away from her. When a man hollered I jumped off. It was almost done together. You might have counted six after he hollered before she was struck. The train was backing from the main line across Eleventh Street through the gates. She was walking right along the pathway next to the ice company fence from a westerly direction; was in the street; pathway was to the left of the street, and she was in about six feet of the track when the man hollered. The car was backing into here (indicating gates), and it was nearly behind her and to her right. She was going along the path. When the man hollered 'Look out!' the front end of the leading car, which was being backed across Eleventh Street, was about the center of the street, which at that point was twenty feet wide. It hit her back on the shoulder first and knocked her down and turned her right around, and when she fell she fell on her back. She was something like six feet from the westerly rail of the track when the man hollered 'Look out!' Would say that the side of the box car extended about three feet over the rail. Train, when it went up the main line before going into spur-track, was going pretty fast towards Shelby. There were two cars behind and one in front of the engine. They then headed in on the ice house spur-track, to deliver the car ahead of the engine, which was pushing it in the direction of the gates; one car between the engine and the ice house. The train went up on the main line in the direction of Shelby, passed the switch, reversed and came back. When the gates in the fence which is around the ice house plant are closed it has the appearance of being a solid fence. The gates were open that morning when plaintiff's intestate was killed. She lived about two blocks and a half from this crossing. She looked to be twenty-two or twenty-three years old; had never seen her walking along there before.

"The engineer and fireman could have seen the woman as she approached the crossing. If there had been a man on the leading end of the car he could have seen her walking along there as she approached the crossing. The man, as I have said, was near the middle of the car, and I was some fifteen feet further up the track from where the woman was killed. The train backed up from behind the woman."

John Hudson testified: "I live about a block west of Johnson Street crossing. When I was going on up in the direction of the crossing and the train had kinder slackened up at Johnson Street crossing, and I came on up there and sorter slacked up myself, and they passed me, and they let out from there, and they put on speed, going towards the ice house. I live on Eleventh Street, and had cut into Johnson Street to go across the railroad. When I saw them the train went on,

passed the spur-track switch without stopping. Didn't know where they were going. Saw them go into the spur-track. They were ringing no bell or blowing no whistle. Nobody on cars anywhere besides the engine as they passed me. People use Eleventh Street at this crossing a good deal. No sign up to indicate that it was a railroad crossing; no watchman there."

There was other evidence introduced tending to support the contention of the plaintiff.

At the conclusion of the evidence his Honor entered judgment of nonsuit and the plaintiff excepted and appealed.

*E. R. Preston, F. I. Osborne and John M. Robinson for plaintiff.*
*Cansler & Cansler for defendant.*

ALLEN, J. The defendant does not contend that there is no evidence of negligence, but it insists that on the evidence introduced by the plaintiff his intestate was guilty of contributory negligence, in that she was killed upon a public crossing and that she entered thereon without looking and listening.

The rule prevails very generally and is firmly established in our law that it is the duty of a traveler, whether on foot or in some vehicle, to look and listen before entering upon a railroad crossing, and that his failure to do so is negligence which will bar a recovery if it is the proximate cause of an injury or death, but this duty is not always an absolute one and may be qualified by attendant circumstances, *Sherrill v. R. R.,* 140 N. C., 252; *Talley v. R. R.,* 163 N. C., 571; *Fann v. R. R.,* 155 N. C., 141; *Johnson v. R. R.,* 163 N. C., 443.

In the last of these cases, after stating the rule that it is the duty of a traveler to look and listen, the Court says: "The duty of a traveler arising under this rule is not always an absolute one, but may be so qualified by attendant circumstances as to require the issue as to his contributory negligence by not taking proper measures for his safety to be submitted to the jury"; and in 33 Cyc., 1003, "The mere failure, however, to look or listen, or to look and listen before crossing, is not, as a general rule, negligence *per se* as a matter of law; but whether or not such failure is negligence usually depends upon the circumstances at the particular time and crossing and is a question for the jury to determine, although it may be negligence as a matter of law under some circumstances"; and again, page 1007, "A traveler's knowledge or familiarity with the railroad crossing and his knowledge of the schedule of the approach of trains have an important bearing on the question of his contributory negligence. So it may be contributory negligence for him to go on a crossing with which he is familiar without looking or listening for approaching trains, when, under similar circumstances, it would

not be contributory negligence for a person who is a stranger to the crossing to do so."

Circumstances which may be pertinent and may qualify the duty to look and listen are obstructions which prevent the exercise of the sense of sight and hearing; the condition of the crossing; the use made of the track over which the crossing runs; the knowledge and familiarity of the person with the crossing and other circumstances.

In this case there is no evidence of an obstruction which would have prevented the intestate from seeing the approaching train, but if the evidence is considered in the most favorable light for the plaintiff, which we must do upon a motion for judgment of nonsuit, it appears that the intestate was comparatively a stranger in Charlotte and was not familiar with the crossing and its surroundings; that the crossing was on a spur-track running to industrial plants and was not regularly used; that it was not generally used in going to the industrial plants early in the day, the time that the intestate was killed; that there was no sign at the crossing; that the rails of the spur-track were practically level with the ground and could not be easily discovered by reason of earth left thereon by the frequent passing of vehicles across them; that when the intestate came near to the crossing the train, which afterwards struck her, was on the main line and that it came upon the spur-track without ringing a bell or blowing a whistle, with the engine pushing a car in front of it, and with no man on the rear of the car; that it was making no noise, and it struck the intestate from behind.

The inference may be drawn from this evidence that the crossing was in such condition that one unacquainted with the surroundings and in the exercise of ordinary care might approach it without knowing that there was any railroad track, or if the track was discovered, might reasonably believe that it was not in use.

As was said in *Doyle v. R. R.*, 139 N. Y., 637, upon facts similar to those in this case: "But the circumstances are to be considered. She was rightfully on a public street, walking on the south sidewalk in the direction of the coming train. She did not know of this isolated track of the defendant. Its existence was not indicated by the conformation of the ground, nor by any flagman or flaghouse or other sign. If her attention had been challenged by a bell or whistle, this deception might have been corrected in time to have prevented any injury. We think it was for the jury to say, under all the circumstances, whether the plaintiff exercised ordinary prudence and care."

We express no opinion upon the weight of the evidence, but think it is sufficient to entitle the plaintiff to have it considered by a jury.

Reversed.