10487

FAIREY v. STRANGE *ET UX.*

(104 S. E. 325.)

1. INFANTS—CHANCERY MAY ORDER SALE OF LAND ONLY WHERE NECES-
SARY.—The Court of chancery has the power to order the sale of the
land of minors, but a necessity therefor must be made to appear
very clearly.

2. INFANTS—WHEN PROPERTY MAY BE SOLD STATED.—When infants have
land that allows but little income in proportion to its value, espe-
cially when the expense of holding it is proportionately great, or have
need of money for food, clothing, medical services, or education
that parents cannot supply, a Court of chancery is authorized to
allow a sale of land, and for the latter purpose the corpus may be
invaded, as well as the income.

3. EVIDENCE—IGNORANCE OF LAW EXCUSES NO ONE.—While there is no
presumption that every one knows the law, still ignorance of the law
excuses no one.

4. CONTRACTS—CONTRACT TO SELL LAND IN WHICH MINOR HAD INTER-
EST HELD VOID.—A contract to convey land in which minors had an
interest, and requiring the seller to bring proceedings to have the
interest of the infants sold, was void, where both parties to the con-
tract knew at the time of its execution that there was no necessity
for selling the property as far as the children were concerned, and
seller was not liable in damages for failure to deliver a deed.

5. VENDOR AND PURCHASER—PURCHASER, REFUSING OFFER TO CONVEY, NOT ENTITLED TO DAMAGES.—Where seller under contract to convey land offered to convey whatever interest they had, but refused to bring Court proceedings that would permit conveying to the purchaser interests of minors in the property, purchaser had no cause of action for damages against the sellers, on the ground that a deed by one of the sellers to the other created in the latter a fee conditional, under which she could have conveyed a fee.

Before SEASE, J., Fairfield, September, 1919.    Affirmed.

Action by Thomas A. Fairey against C. E. and Louise Strange, on contract to sell real estate. From directed verdict for defendants, the plaintiff appeals.

For former appeal in this case, see 112 S. C. 155.

*Messrs. T. M. Lyles, W. C. Wolfe, J. W. Hanahan* and *McDonald & McDonald,* for appellant, cite: *Where vendor contracts to sell land in which he knows at the time that he has no title, he is bound to make good to the vendee his loss by way of damages:* 40 N. Y. 59; 100 Am. Dec. 463; 66 Am. Dec. 107; 6 Wheat. 109; 19 U. S. 109; 5 L. Ed. 218; 4 Am. Rep. 490; 21 Mich. 374; 20 Am. Rep. 677; 106 Am. St. Rep. 951; 42 N. Y. 175; 69 N. Y. 204; 3 Jones & S. 41; 57 N. Y. 160; 122 Am. St. Rep. 31; 5 A. & E. Ann. Cas. 212; 77 S. C. 64; 69 S. C 373; 16 L. R. A. (N. S.) 773; 109 Ga. 714. *Strange children had only contingent life estate:* 51 S. C. 555; 106 S. C. 224. *Difficult to say when contract should be declared void as against public policy:* Storey Contracts, sec. 675; 13 Am. St. Rep. 355; 32 Cyc. 1251.

*Mr. Wolfe* cites: *Word "heirs" is omitted, so that entire estate did not pass out of Strange by his deed:* 102 S. C. 361. *"Children" was used here in the sense of "heirs:"* 93 S. C. 184; *hence we have a grant to "our heirs by her begotten" which creates a fee conditional:* 77 S. C. 230.

*Messrs. W. D. Douglass* and *Glenn W. Ragsdale,* for respondents. *Mr. Douglass* cites: *Contract to sell land in*

*which interests of children outstanding, on promise to resort to Court to authorize sale, cannot be enforced:* 73 S. E. 1004; 47 Ill. App. 660; 136 N. C. 444; 67 L. R. A. 977. *Where one warrants his own authority to sell he may be liable, but not where he contracts to sell interests of others, and vendee knew facts:* Reinhardt Agency, sec. 308. *Interests of individuals must be subservient to the public welfare:* 6 R. C. L. 707, 755, 710. *Damages should be limited to amount paid and interest:* 57 N. Y. 155. *Children take at least a life estate:* 101 S. C. 424. *Damages certainly limited to actual expense and expenditures where vendor acted in good faith:* 16 L. R. A. (N. S.) 771; 16 L. R. A. (O. S.) 624.

*Mr. Ragsdale* cites: *Decisions on both sides of liability of vendor:* Elliott Contracts, vol. III, sec. 2162. *Rights of infants in property under the supervision and care of the Courts:* 86 S. C. 410; 108 S. C. 1; 18 S. C. 123. *Contract not enforcible:* 73 S. E. 1004. *Mrs. Strange took only life estate:* 39 S. C. 131; 91 S. C. 291; 69 S. C. 292. *Having tendered conveyance of their interests in land the Stranges are not liable for damages:* Page Contracts, vol. III, sec. 1428; Elliott Conts., vol. III, sec. 1976. *Party cannot sue for specific performance, and after adverse decision, sue for damages: Elliott v. Page,* 98 S. C. 402; 107 S. C. 465; 4 Rich. Eq. 210.

July 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The plaintiff and the defendants entered into a contract, whereby defendants agreed to convey to the plaintiff a certain tract of land in Fairfield county. The contract was made in July, 1917, the deed to be delivered in December of that year. The tract of land to be conveyed had formerly been two tracts, to wit, the Rabb tract and the McCants tract.

treated in the contract of sale as one tract. The defendant, C. E. Strange, had conveyed an interest in the McCants tract to his wife and children. When the plaintiff was called to the witness stand, in reply, he said:

"Mr. Strange said that he had already consulted his attorney, and it only required a little Court proceeding to correct his title. He said he could do it. He said he had done a very foolish thing, and he did not know why he had done it, but said he had consulted his attorney. He said he had conveyed this tract of land to his wife and children, and it would require a little Court proceeding."

The plaintiff contracted to pay $60 per acre, but testified that in December, when the deed was to have been made, the land had increased in value to $100 per acre. Mrs. Strange was very unwilling to sign the deed, but after much pressure was brought to bear upon her—not enough, however, to be considered duress—she did sign the contract of sale. Under this contract the plaintiff demanded his deed. The defendants offered the plaintiff such title as they had, at the contract price, but refused to take the necessary "Court proceedings" to divest their children of their interest in the land. This offer the plaintiff refused, and brought this action for damages for a breach of the contract.

At the first trial the plaintiff construed the answer of the defendants to contain an offer to convey the Rabb tract alone, and took an order for the conveyance to the plaintiff of that part of the land bargained for. From this order the defendants appealed, and this Court held that the contract was an entire contract, and specific performance of a part of the contract could not be enforced. At the second trial the plaintiff again demanded damages for the breach of the contract. When Judge Sease found that the contract required the divesting of the interests of minors in the land, he directed a verdict for the defendants. From the judgment entered on this verdict the plaintiff appealed.

1. The plaintiff complains that defendants refused to do so small a thing as to take a simple Court proceeding to make the title good. Judging from this and other cases that have come before us, there is a misapprehension as to such proceedings. The Court of chancery has the power to order a sale of the property of minors in proper cases. A man may kill his fellow man, but it must be a case of necessity, and he must make the necessity apparent at his peril. The Court of chancery has the power to order the sale and divest the interests of infants, but the necessity must be made to appear very clearly. In this case there is no necessity apparent. When infants have property that yields but little income in proportion to its value, especially when the expense of holding it is proportionately great, the Court is authorized to allow a sale for reinvestment in property that will bring in a better income. Sometimes an infant has need of an income from its property to furnish food, clothing, medical services, or education that its parents cannot supply. Life, health and education is more important than the possession of property. It is more important that the infant should come to years of maturity with health and the power to enjoy life and to make its own money than to come to maturity with broken health and small capacity to use its life to the best advantage. While the income must primarily be used in extreme cases the corpus may be invaded.

In this case there is no word to show that Mr. Strange is not abundantly able to provide for the maintenance of his children. There is no intimation that the children needed anything. There is no evidence to show that the property was not yielding as good income as its value could produce in any other form of investment. The proposition was to convert land into money. Land is the safest investment known to the law, and mere money the most unsafe and easiest to lose. The land was worth $60 per acre at the time the contract was made in July, and $100 per acre when

the land was to have been conveyed in December. The property in which the infants had an interest was rapidly increasing in value. In order to carry out the contract, Mr. Strange would have been required to perjure himself and suborn perjury in others. He would have been obliged to break faith with his children, whom he was bound to protect, and deceive the Court, and there was a moral and legal duty upon him to deal fairly with the Court. Besides this, if the "little Court proceedings" had turned out as they hoped it would, it may not have done the plaintiff much good. When these children became entitled to the property under their father's deed, and it was made to appear to the Court that the life tenants and the purchaser had conspired to sell the land of minors at an undervaluation, and thus defeat their rights, ther- is but little doubt that the Court would cancel their deed : .r fraud.

While there is no presumption that every one knows the law, still ignorance of the law excuses no one. All the parties did know the facts, *i. e.,* they knew that infants had an interest in the land, they knew they could not convey the interest of the infants, they knew that at the time the sale was to have been consummated the land was worth one-third more than at the time the contract of sale was made, and they knew it was not to the interest of the infants to make the sale. In dealing with the interest of infants in property, the good of the infants is the paramount question. Is it for the best interest of the infants that the sale be made? If the answer to that question be "No," then the sale will not be made. The adult parties could make no binding contract which the law would enforce, or for the breach of which a right of action arose.

When one offers to indemnify another for the doing of an act that both parties knew to be contrary to law, the indemnity is void. In *Jamieson v. Calhoun,* 2 Speers 20, we find:

"But if this was a corrupt agreement to do what both parties know to be a trespass, then I apprehend the promise would be void. In such case, both parties would be equally criminal, and the law will not lend its aid to enforce a contract in favor of one who had contracted about a violation of his duty to society; and hence it is laid down in all cases, if one knows the act to be unlawful, the promise of indemnity is void."

See, also, *Davis v. Arledge,* 3 Hill 170, 30 Am. Dec. 360.

A breach of duty and a crime were necessary to carry out this contract of sale, and for a failure to perform it no legal obligation arose. The exceptions that make this question are overruled.

2. The appellant claims that the deed made by Mr. Strange to his wife and children created in Mrs. Strange a fee conditional, and, inasmuch as Mrs. Strange had children living at the time, she could have conveyed a fee.

Even if this be the true construction of the deed, it does not help the appellant. Mr. and Mrs. Strange offered to convey such title as they had, and the offer was refused. In that event there was certainly no cause of action against those who offered full compliance, in favor of him who refused to accept the offer. The exceptions that raise this question are overruled. In this we have not considered the North Carolina case, as it is not necessary to do so.

When a man raises a question like this, and it inures to his own benefit, he subjects himself to adverse criticism; but the law will protect the interests of those under disability. Even if a sense of fairness between those who are *sui juris* would incline the Court to sympathize with one or the other, still the law would protect the interests of those under disability. Here both parties are equally to blame, and there is not even a temptation to violate the law.

The judgment is affirmed.