17899

Pacettie McDOWELL, Respondent, v. Carlisle H. FLOYD and M. N. Carroll d/b/a Carroll Motors and Dan Hucks of which Carlisle H. Floyd and M. N. Carroll are, Appellants.

(125 S. E. (2d) 4)

*Messrs. Burroughs & Green,* of Conway, *for Appellants,*

*Ogden A. Rankin, Esq., of Conway, for Respondent,*

April 11, 1962.

TAYLOR, Chief Justice.

This appeal is from an action brought in the Court of Common Pleas for Horry County seeking damages for injuries allegedly received by Respondent when struck by an auto owned by Appellant Carroll and driven by Appellant Floyd.

The complaint alleges injuries sustained by Respondent by reason of certain acts of negligence on the part of Appellants. The answers of Appellants Floyd and Carroll contained a general denial, plea of unavoidable accident, contributory negligence and recklessness, sole negligence and recklessness on the part of Respondent and combined negligence and recklessness on the part of Respondent and the driver of Appellant Dan Hucks vehicle.

The collision occurred in the nighttime on an improved secondary highway, S-26-24, in Horry County. The highway is 21 feet wide at the point on a straight stretch of approximately 300 yards, approximately 100 yards from a curve to the east and approximately 700 feet from a curve to the west.

Respondent's car, headed east, was stopped on the highway, without lights, when a pickup truck, owned by Appellant Dan Hucks and driven by his daughter, stopped alongside, headed west, in its right lane. Its cab was approximately opposite the rear of Respondent's automobile, with its headlights on. Respondent, who was out of her car, walked over to the pickup and talked to the driver. While standing there, she observed the lights of the Floyd-Carroll vehicle approaching around the curve from the west, approximately 700 feet distant, in the lane in which Respondent's vehicle was stopped. Respondent then moved to a position behind her vehicle before it was struck by the oncoming car resulting in her injury.

Upon trial Appellants made timely motion for a directed verdict on the ground that the only reasonable inference to be drawn from all the testimony was that Respondent was guilty of contributory negligence and recklessness. This was refused and the case submitted to the jury which returned a verdict in favor of the Respondent against Appellants Floyd and Carroll in the sum of $15,000.00, thus exonerating the Appellant Hucks.

Appellants contend error in that (1) the only reasonable inference to be drawn from all the testimony is that Re-

spondent was guilty of contributory negligence and reckless-ness and (2) that the Court erred in permitting the witness Arnie Brown to testify concerning an experiment he conducted during trial in that the experiment was not conducted under circumstances sufficiently similar to those existing at the time of the collision.

Inasmuch as we are of opinion that the case must be reversed and remanded for a new trial on the second question, we will not discuss the question of contributory negligence other than to say that an examination of the record reveals that there was sufficient evidence to require the case being submitted to the jury and we find no merit in this contention.

As to the second contention, the record reveals that the witness Arnie Brown had testified previously but was recalled the following day after having made an experiment at the scene the night before. The pertinent part of this testimony appears as follows:

"Q. Mr. Brown, you testified yesterday about some measurements, and then after that I put Mr. Dan Hucks up about some measurements. Did you go back to the scene of the accident last night?

"A. Yes.

"Q. Looking back from the scene of the accident back in a westerly direction, did you park an automobile where the scene of the accident occurred?

"A. Yes, right in the spot the Chevrolet was sitting.

"Mr. Green: Your Honor, we object to the testimony of any experiments last night at the scene of the accident. His testimony is that he parked the car where the McDowell car was. That is hearsay. We don't know the degree of the lights either.

"The Court: That is testimony that would be given its weight.

"Q. Did you park it?

"A. Yes.

"Q. Would you please tell the jury of any measurements you made and how you made them?

"A. I goes around the curve which the cars was traveling to come back the same direction, they were traveling at the time the accident happened and I drove until my lights showed me this car sitting there and I stopped and I made a mark, and it was dangerous measuring last night, and Mr. McDowell came by and measured the distance, and I **didn't measure it, but this is the** distance here and I think it is right.

"Q. What type of mark did you make, sir?

"A. Taken a big lump of dirt as big as a four quart measure and pushed it right at my lights.

"Q. From your observation of the marker at the scene of the accident, what is your approximation?

"A. Well, my, if I know how to answer that question.

"Mr. Green: Your Honor, I don't think he has sufficiently identified which distance he has identified. I don't know which. This gentleman testified that he didn't make any measurements himself.

"The Court: As I understand he asked for an estimation. I think he can testify to that.

"Q. What is that?

"A. Seven Hundred Twenty-six (726) feet.

"The Court: Are you reading that which was somebody else's or is that your estimate?

"A. That is my estimate, but they measured it.

"Q. Did you see that?

"A. Yes.

"Q. Did you notice anything on it?

"A. I don't recall.

"Q. Could you tell what portion Mrs. Pacettie's body hit that car in any way?

"Mr. Green: I don't think he can testify to that, your Honor.

"The Court: No, he can't testify to that.

\* \* \*

"Q. You testified you went back to the scene and you placed this car here without lights on it?

"A. Yes.

"Q. You placed it where the McDowells told you?

"A. No, I placed it where the McDowell car was. I placed it where I saw the McDowell car at the scene.

"Q. You placed the car here without lights?

"A. Yes.

"Q. You came to this direction?

"A. Yes.

"Q. You stopped and made a mark where you could see this car?

"A. Yes.

"Q. At that time did you have a car sitting here with bright lights on it facing you?

"A. No.

"Mr. Green: Your Honor, we move to strike this because I don't see where this experiment is related at all because there was different circumstances.

"The Court: I overrule the objection."

"One desiring to make an experiment in court or to introduce evidence of an experiment made out of court should first show that the experiment is to be made or was made, as the case may be, under conditions and circumstances similar to those prevailing at the time of the occurrence involved in the controversy; otherwise, the courts will not as a general rule, permit the making of the experiments or the introduction of evidence thereof. It is not, however, necessary in order to render experiments permissible or to admit evidence of experiments made out of court that the conditions be identical with those existing at the time of the occurrence; it is sufficient if there is a substantial similarity. Minor variations in the essential conditions go to the weight rather than to the admissibility of the evidence. If, on the other hand, the requirement of substantial similarity is not satisfied, the courts have uniformly refused to admit experimental evidence. * * * *" 20 Am. Jur. 628, 629, Evidence, Sec. 756; see also 8 A. L. R. 18.

At the time of the collision, Appellant Floyd was traveling east facing the headlights of the pickup truck which he contended blinded him and prevented him from seeing Respondent and her vehicle stopped in his lane of traffic without lights. In performing the experiment, witness Brown placed an unlighted vehicle on the highway approximately where Respondent's vehicle was stopped and measured the distance from which it could be seen at night coming around the curve from the west. He did not place a vehicle headed west approximately alongside with the headlights burning as was the case at the time of the collision. It is common knowledge that one's ability to perceive an object in the nighttime is greatly diminished when faced with the glare of oncoming lights and has been the subject of considerable legislation with the view of promoting safety upon the highways and preventing, among others, the very situation with which Appellant Floyd contends he was confronted. See Code of Laws of South Carolina, 1952, Art. 15, Section 46-521 *et seq.,* especially 46-548.

It can hardly be reasonably contended that the conditions which confronted Appellant Floyd as he approached the bright lights of the pickup truck were substantially similar to the conditions with which he would have been confronted had there been no bright lights facing him. When it became clear to Appellants' counsel that such were the circumstances, he immediately moved to strike the testimony relative to the experiment in that it was performed under circumstances dissimilar to those under consideration, and we are of opinion that it was error to refuse the motion.

For the foregoing reasons the verdict and judgment appealed from is reversed and set aside and the case remanded for a new trial.

Moss, Lewis and Bussey, JJ., concur.