### 18041

Dennis Gary DOREMUS, by his Guardian ad Litem, Ray Rentz and J. F. Davis, Respondents, v. ATLANTIC COAST LINE RAILROAD COMPANY, Appellant

(130 S. E. (2d) 370)

126

*Messrs. McKay, McKay, Black & Walker,* of Columbia, *for Appellant,*

*Messrs. Blatt & Fales,* of Barnwell, and *Kearse, Kemp & Rhoad,* of Bamberg, *for Respondents,*

130

*Messrs. McKay, McKay, Black & Walker*, of Columbia, *for Appellant, in Reply,*

March 19, 1963.

BUSSEY, Justice.

This is an action to recover damages for personal injuries sustained by the infant plaintiff, Dennis Gary Doremus, when an automobile in which he was riding was involved in a collision with a train of the defendant at a crossing. A verdict for $75,000.00 actual damages, and $50,000.00 punitive damages was returned for the plaintiffs.

J. F. Davis, a resident of Virginia, is a party plaintiff by virtue of the assignment of a 1/100 interest in the claim of the infant plaintiff, executed by the duly appointed guardian *ad litem* of the infant plaintiff, said assignment having been authorized by order of Honorable J. B. Ness, Resident Judge of the Second Circuit, upon a petition of the guardian *ad litem* for such authority.

The defendant filed a motion to dismiss as to the plaintiff Davis on the ground that the complaint stated no cause of action in his favor, it being contended that under the law of South Carolina a cause of action for personal injuries is not assignable and that no power inhered in the court of common pleas to authorize an assignment on behalf of an infant of any right of recovery for tort.

Coupled with such motion was another motion asking the resident judge to review and vacate his order authorizing the assignment. Both motions were denied by the circuit judge and defendant duly appealed. The defendant answered denying that any negligence, willfullness or recklessness on its part was the proximate cause of any injury or damage suffered by the minor plaintiff; denied that the plaintiff, J. F. Davis, had any interest in the litigation, and set up the affirmative defense of gross contributory negligence, willfullness and recklessness on the part of the driver of the automobile.

. The case came on for trial before the Honorable J. B. Pruitt, in the course of which timely motions for nonsuit, direction of verdict, judgment *non obstante veredicto* and a new trial were made and denied. The trial judge ordered a new trial unless the plaintiff should reduce the amount of punitive damages from $50,000.00 to $25,000.00, which reduction was accepted of record.

Due and timely notice of intention to appeal by the defendant followed and we are here concerned with exceptions to the rulings of the resident judge, as well as exceptions to the rulings of the trial judge.

The collision out of which this litigation arose occurred on the morning of March 4, 1961, at a point in Colleton County where State Highway No. S 15-52 crosses a railroad track of the defendant, about two miles west of the Town of Williams. The highway runs in a substantially northerly and southerly direction and the track of the defendant runs in substantially an easterly and westerly direction. Defendant's train, composed of a diesel engine, nine cars and a caboose, was traveling west en route from Green Pond, South Carolina, to Ehrhardt, South Carolina, and the vehicle in which the infant plaintiff was riding was proceeding in a southerly direction and operated by a brother of the infant plaintiff, Thomas Doremus, who was en route from the Doremus home in Ehrhardt, Bamberg County, to Charleston, South Carolina, for the purpose of a dental appointment. The Doremus brothers had never been on this particular road before, but Thomas Doremus had recently learned of this particular highway as a short cut which he could use en route to Charleston. The engineer of the defendant had been on that particular run "off and on for twelve years."

· The right of way of the defendant in the vicinity of the particular crossing is fifty feet wide, extending twenty-five feet on each side from the center of the track. The evidence shows that to the east of the highway the area is heavily timbered on both sides of the railroad track, and the area

on both sides of the highway as one approaches the crossing from the north is likewise heavily timbered.

The defendant contends that there was no evidence of either negligence or willfullness on the part of the defendant which would justify submitting the case to the jury as to either actual or punitive damages, and that the plaintiffs are barred from recovery because the driver of the car in which the infant plaintiff was riding was guilty of gross contributory negligence or willfullness as a matter of law, which was imputable to the infant plaintiff. These contentions are being discussed together because they necessarily involve a discussion of the evidence and in passing upon both contentions the evidence and the inferences reasonably deducible therefrom have to be regarded in the light most favorable to the plaintiffs.

The allegations of the complaint as to negligence and willfullness on the part of the defendant are several and detailed, but condensed, it is alleged that the defendant maintained an unsafe and dangerous crossing; that it allowed the obstruction of visibility in and around the crossing; that the engine and train were operated at an excessive rate of speed; that it failed to maintain adequate, reasonable and sufficient warnings as to the existence and nature of the crossing; and that it failed to give reasonable or any warning of the approach of the engine at the time and place.

Viewed in the light most favorable to the plaintiff, the following are the facts either clearly shown or reasonably deducible from the evidence. The car in which the infant plaintiff was riding was approaching the crossing at a speed of thirty-five to forty miles per hour, and no signal of any kind was given by the approaching train until the car was within approximately one hundred twenty-five feet of the crossing, when a single blast of the whistle occurred. The day was warm and sunny, with the windows of the car open and no radio playing therein, so that there was nothing to interfere with the driver hearing an earlier warning, had it been given. As soon as the driver of the

car heard the whistle blast, he applied his brakes and laid down skid marks of approximately ninety-five feet before the car came either to a stopped or approximately stopped position with its front wheels on the track where it was struck by the front part of the engine of the defendant. There is direct evidence, as well as circumstantial evidence, from which it can be inferred that the engine was approaching the crossing at a speed of approximately forty miles per hour, although there was a rule of the defendant placing a speed limit on its trains at that crossing of twenty-five miles per hour. There is evidence from a witness for the defendant to the effect that this particular train usually proceeded in that vicinity at forty to fifty miles per hour. There was further evidence from defendant's witnesses to the effect that the train was off schedule that morning. Of significance, we think, is the testimony of the defendant's fireman that, "when the brakes went into emergency I said it was an automobile because it happens so often. Quite a few close calls we don't hit."

As to the appearance of the crossing and the visibility, as it was approached from the north on the highway, there was evidence that the general appearance of the crossing was such that it appeared to be an abandoned track. There was testimony that the angle of the sun at the time of the collision interfered with the travelers' vision so as to partially conceal the warning signs, and in addition, that the warning signs were partially obscured by bushes. There is repetitious testimony to the effect that due to timber, bushes and undergrowth, a traveler on the highway proceeding in a southerly direction would have to be within fifteen to twenty feet of the track before a train approaching from the east could be observed, and there was evidence that to the east of the highway and to the north of defendant's track, trees and undergrowth which would obstruct a traveler's vision were within eight feet of the track.

As to warning signs, there is a Highway Department railroad crossing sign on the shoulder somewhat less than four

hundred feet north of the crossing, and the usual railroad crossing sign near the track. The injuries to the infant plaintiff were such that he was unable to recollect any of the events immediately before or at the time of the collision. The driver of the automobile testified that he did not see either of the warning signs and did not know that he was in the vicinity of a railroad crossing until he heard the single blast of the whistle when approximately one hundred twenty-five feet from the actual crossing. He admitted that the signs could be seen, but attributed his failure to observe them to the angle of the sun and to the partial obscurity of the signs as a result of vegetation.

The foregoing are the principal facts viewing the evidence in the light most favorable to the plaintiff, as we are required to do. Much of it was sharply contradicted by witnesses for the defendant, particularly as to the speed of the train, visibility, and the signals given. In view of the recited facts, however, we are convinced that there was abundant evidence to warrant the submission to the jury of the issues of both negligence and willfullness on the part of the defendant, and to sustain a verdict for both actual and punitive damages. There was evidence not only of the failure to give the signals required by statute, but evidence of common law delicts of the defendant which the jury could have found to be not only negligent, but willful and the proximate cause of the injuries sustained by the infant plaintiff. Independently of the signal statute, Section 58-743 of the Code, it is the common law duty of the Railroad Company to give such signals as may be reasonably sufficient in view of the situation and surroundings to put individuals using the highway on their guard. *Chisolm v. Seaboard Air Line Ry.*, 121 S. C. 394, 114 S. E. 500, from which we quote the following:

"A railroad company and a traveler on a highway crossing are charged with the mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the

greater the care required of both. *Edwards v. [Southern] Railway,* 63 S. C. [271] 288, 41 S. E. 458; *Johnson v. S. A. L. Ry. Co.,* 163 N. C. 431, 79 S. E. 690, Ann.Cas.1915B, 598; *[Southern] Railway Co. v. Hansbrough's Adm'x,* 107 Va. 733, 60 S. E. 58."

Here, viewed in the light most favorable to the plaintiffs, the evidence disclosed an unusually dangerous crossing, the nature of which was well known to the defendant, but unknown to the driver of the car or the infant plaintiff.

The defendant contends that the driver of the car was negligent, willful and reckless in driving the car at a high rate of speed; in failing to keep it under control; in failing to keep a proper lookout; in failing to exercise his senses of sight and hearing at a place where they would have been effective; in failing to exercise the slightest care when he knew or should have known he was approaching a railroad crossing; and in failing to observe the approach of the defendant's train, when he should have seen and heard the same and had his car under sufficient control to stop before running in front of it.

On the evidence before us we are unprepared to say that the driver of the car was, as a matter of law, guilty of gross or willful contributory negligence which was imputable to the passenger so as to bar a recovery under Section 58-1004 of the Code. While the evidence is susceptible of the inference that the driver of the car failed to exercise due care, we think that under all of the evidence it was for the jury to determine whether the conduct charged to the driver and his admitted failure to see the signs or hear or observe the train until he was within one hundred twenty-five feet of the crossing, was mere inadvertence on the part of the driver and, therefore, simple negligence, or whether such amounted to gross or willful negligence on his part.

Moreover, even if the driver were guilty of such conduct, on the record before us the jury could have found that common law delicts on the part of the

defendant were the proximate cause of the collision and that there was no failure to give the statutory signals which contributed to the collision as a proximate cause. Under these circumstances, gross or willful contributory negligence on the part of the driver of the car would not be imputable to the infant plaintiff so as to bar recovery. *Padgett v. Southern Railway,* 216 S. C. 487, 58 S. E. (2d) 895; *Limehouse v. Southern Railway Co.,* 216 S. C. 424, 58 S. E. (2d) 685; *Rock v. A. C. L. Railroad,* 222 S. C. 362, 72 S. E. (2d) 900.

Several exceptions on the part of the appellant challenge the validity and effect of the assignment of a 1/100 interest' in the infant plaintiff's claim to the plaintiff J. F. Davis. It is contended by the appellant that the trial judge should have stricken plaintiff Davis from the proceeding upon the ground that there was no evidence of any proper legal interest which he had in the cause of action, and with respect to the resident judge, it is contended that he erred in refusing to vacate his order of July 24, 1961, which authorized the assignment, and in failing to dismiss the action on the alleged ground that the complaint stated no proper cause of action in favor of the plaintiff Davis.

The question raised by exceptions dealing with the assignment, and properly before the court, we think are correctly stated as follows:

(1) Is a cause of action for tort due to personal injury assignable under the law of the State of South Carolina?

(2) Is the assignee of a 1/100 interest in such cause of action a proper party plaintiff in a suit brought by the assignee and assignor as joint plaintiffs on a claim arising out of this tort?

(3) Does the Court of Common Pleas have the authority to authorize a partial assignment of a minor's interest in a cause of action for personal injury?

The precise question of whether a cause of action for tortious personal injuries is assignable under the law of this

state has not heretofore been decided by this court. The general rule of law, however, is set forth in 4 Am. Jur. 253, Assignments, Section 31, as follows:

"Since the reason for holding that choses in action for personal injuries resulting from negligence or from other tortious acts are not assignable lies in the fact that they do not survive the death of the person injured, the weight of authority is to the effect that the enactment of statutes providing for the survival of actions operates incidentally to remove the restrictions on their assignability. The question of survivorship becomes the test whether an assignee can recover."

To the same effect is the following from 6-C. J. S. Assignments § 32, p. 1080:

"As a general rule survival is the test of assignability of a right of action *ex delicto*— if a right of action arising out of tort is of such a nature that, on the death of the party entitled to sue, it would, either by statute or in accordance with the rules relating to the survivability of actions *ex delicto* in general, as shown in the title Abatement and Revival § 138, survive to his personal representative, it may be assigned; but, if the right of action is such that it would not survive, it may not be made the subject of a valid assignment."

The question of assignability of a cause of action for personal injuries has been passed upon on three occasions by the Federal District Court in South Carolina. Judge Wyche, in the case of *McWhirter v. Otis Elevator Company* (S. C.), 40 F. Supp. 11; Judge Hoffman (a visiting United States District Judge from the State of Virginia) in the case of *Lisenby v. Patz,* (S. C.), 130 F. Supp. 670, and Judge Timmerman in *Hair v. Savannah Steel Drum Corp.* (S. C.), 161 F. Supp. 654. Judge Hoffman held in the *Lisenby case* that such a cause of action was not assignable under the law of South Carolina, while Judge Wyche in the *McWhirter case* and Judge Timmerman in the *Hair case* held that such

was assignable under the law of this state. In upholding an assignment for a cause of action for tort arising from personal injuries, Judge Wyche, in the *McWhirter case,* said:

"A right of action for personal injuries is assignable where it would, on the death of an assignor, survive to his legal representative. Section 419, Code of Laws of South Carolina 1932, provides: 'Causes of action for and in respect to * * * any and all injuries to the person * * *, shall survive both to and against the personal or real representative (as the case may be) of the deceased persons'. This section authorizes the assignment of a right of action for tort. *Bultman v. Atlantic Coast Line R. Co.,* 103 S. C. 512, 88 S. E. 279."

While the *McWhirter case, supra,* did not involve a partial assignment in that the whole cause of action was assigned therein, Judge Wyche recognized that the assignability of a cause depended on survivability and held that since a cause of action for tort for personal injury survived the death of the injured party, it was without doubt assignable by such injured party.

The exact legal question with which this court is confronted was raised in the case of *Hair et al. v. Savannah Steel Drum Co.* (D. C. S. C.), 161 F. Supp. 654, a case in which the plaintiff George F. Hair, a resident of South Carolina, had assigned a 1/100 interest in his cause of action for tort due to personal injury to his co-plaintiff, Warren H. Hinks, a resident of Pennsylvania, and thereafter these plaintiffs brought a suit against the defendant, Savannah Steel Drum Company, a Pennsylvania corporation, in our state court. The case was removed to the United States District Court for the Eastern District of South Carolina, Aiken Division, and the plaintiffs' motion to remand was granted by Judge Timmerman. In refusing to concur with the opinion in the *Lisenby case* decided by Judge Hoffman, Judge Timmerman said:

"In my opinion, the *Lisenby case,* misconstrued the law of South Carolina. In *McWhirter v. Otis Elevator Co.,* D. C.,

40 F. Supp. 11, 15, Judge Wyche said: '* * * A right of action for personal injuries is assignable where it would, on the death of the assignor, survive to his legal representative. * * *'

"The *Bultman case,* cited in Judge Wyche's opinion, held that Section 3963, South Carolina Code of Laws, 1912 (Secton 10-209, South Carolna Code of Laws, 1952), providing for the survival of certain causes of action, has the incidental effect of making such causes of action assignable. Judge Hoffman, in viewing this holding as dictum in so far as it applied to claims for injuries of a personal nature, did not feel that he was bound by the *Bultman case,* but I cannot agree. In an annotation in 40 A. L. R. (2d) 500, at 508, the majority view respecting the effect of survival statutes on the assignability of claims for personal injuries is thus stated.

" 'As already noted, rulings that a claim for personal injuries is not assignable are most often rested on the ground, that, at common law, such claims did not survive the death of the injured person. From this it follows as a matter of logic that personal injuries are generally, although not always, held to be assignable in jurisdictions in which statutory provision has been made for the survival of such claims'

"Eight states are listed as following this view; among them, South Carolina, *McWhirter v. Otis Elevator Co., supra,* being cited. Four states are listed as following the contrary minority view.

"Whatever may have been Judge Hoffman's view as to the effect of South Carolina's Survival Statute, I feel bound to follow the law of South Carolina as declared by its highest Court in *Bultman v. Atlantic Coast Line R. Co., supra.* I see no significance in the fact that the *Bultman case* involved only a claim for property damage. The State Supreme Court did not so limit its construction of the Survival Statute. The reasoning of that decision is just as applicable to personal injury claims as it is to property damage claims. Both types of claims survive the death of the injured person

under Section 10-209, South Carolina Code of Laws, 1952. The Lisenby case assigns claims for personal injuries the same status as claims for libel and slander. Such claims are not assignable, as pointed out in the Lisenby case but neither are they within the class of actions which survive under Section 10-209, South Carolina Code of Laws, 1952."

While, as before stated the precise question has not been before this court, we think that both Judge Wyche and Judge Timmerman correctly concluded that the reasoning of the court in Bultman v. A. C. L. R. Co., 103 S. C. 512, 88 S. E. 279, was just as applicable to personal injury claims as it is to property damage claims. The Bultman case involved an action against a railroad for damages which were caused by a fire communicated to the plaintiff's land by the defendant's engine. After the fire, the plaintiffs purchased the land and accepted an assignment of the grantor's interest in the fire claim. This court, in an opinion by Justice Gage, held the claim to be assignable and we quote from the opinion the following language:

"If the plaintiffs' right to sue be rested solely on the assignment to them of the thing in action, the tort by burning, the issue made by the appeal is that such a thing in action may not be assigned. It would be fruitless to discuss what was the rule of the common law in like cases. Modern statutes have preserved rights which the old judges deemed to have died with those who suffered personal wrongs, or to have been lost when property which abided the injury was alienated before action. The statutes do not in terms declare that such rights are assignable, but that they survive. But the rule of law is that, if alive, then they are capable of assignment. 5 Corpus Juris, page 886, 2 R. C. L. page 613.

"The acts of 1892 and 1905, codified at section 3963 of the Code, are comprehensive. They plainly declare that causes of action for injuries to real estate shall survive. And if section 160 of the Code of Procedure does not authorize, and therefore prohibits, the assignment of a thing in action not arising out of contract, then that section was modified by

section 3963 of the Code of Laws, for that section declared that such things in action shall survive, 'any law or rule to the contrary notwithstanding'; that is to say, notwithstanding the contrary Code rule."

. In the case of *Ex parte Hiers,* 67 S. C. 108, 45 S. E. 146, wherein a claim for usury was held to be nonassignable, this court recognized the test of assignability of a cause of action was whether or not it survived, in the following language:

"The reason for the rule that actions which do not survive are not assignable is thus stated in section 146 of Pom. Code Rem.: 'Since the title of an executor or administrator is regarded by our law as a title by assignment, it was very natural that the courts should consider these statutes as furnishing the criterion by which to determine what things in action are assignable and what are not assignable between living parties.' "

In the early case of *Miller v. Newell,* 20 S. C. 123 (1883), this court held that a cause of action for slander was not assignable, being a tort of a strictly personal character. Of course, a cause of action for slander does not survive under the statute, but it seems to us that the court there recognized that a cause of action for a tort which did survive was assignable. The following is quoted from that opinion:

"Can choses in action on torts be assigned? Torts, in their effects, may be divided into two classes, to wit: those which affect injuriously the estate, real or personal, of a party, and those which cause injuries strictly personal; those which survive to the administrator and those which die with the party injured. It appears that those which affect the estate may be assigned, but those of a personal character cannot."

Thus, while we have not heretofore decided the precise question, this court has repeatedly affirmed the principle that causes of action for tort which survive are assignable, while those which do not survive are not assignable. As to the contention of the appellant that the plaintiff Davis, as the assignee of a 1/100 interest in the

infant plaintiff's cause of action, is not a proper party plaintiff in a suit brought by the assignee and assignor as joint plaintiffs, we think this contention was clearly decided adversely to the appellant in the case of *Ridgeland Box Mfg. Co. v. Sinclair Refining Co.,* 216 S. C. 20, 56 S. E. (2d) 585. Then, as to the contention that the Court of Common Pleas did not have authority to authorize a partial assignment of a minor's interest in a cause of action for personal injuries, we need only quote from *Bulow v. Buckner,* Rich. Eq. Cas. 401, the following language of Chancellor Harper:

"The jurisdiction of chancery to sell and convey an infant's estate, however questionable it may have been when first exercised, is now too firmly established to be shaken. It has been familiarly exercised ever since a court of chancery has existed in this state * * *."

This principle has been reaffirmed by our court many times; among the more recent cases are *Cannon v. Cannon,* 135 S. C. 183, 133 S. E. 556, and *Fairey v. Strange,* 115 S. C. 10, 104 S. E. 325. Of course, it is axiomatic that the court must be satisfied that an advantage would flow to the minor before exercising its authority to convey a minor's property rights. Here, the court, on a showing that the partial assignment was to the advantage of and in the best interest of the minor, had full jurisdiction to decide that it was in fact to the minor's advantage and authorize the assignment. The record contains nothing to cast any question or doubt on the fact that the assignment was, in reality, for the best interest and advantage of the minor plaintiff.

The appellant argues in its brief that even though the assignment was otherwise proper and lawful, the guardian *ad litem* was not a proper person to execute the assignment even though authorized by the court to do so. This contention was not raised or passed upon below and is not raised by any of appellant's exceptions on this appeal, and therefore, is not properly before us for consideration.

The next question for determination is whether or not the trial judge abused his discretion in refusing to grant a new trial on the ground that the verdict was so excessive as to show caprice, passion or prejudice on the part of the jury. The principles of law which govern the decision of this question have been set forth so often in opinions of this court that we see no need to repeat them here. For the applicable principles of law see, among others, the cases of *Charles v. Texas Co.,* 199 S. C. 156, 18 S. E. (2d) 719; *Ford v. A. A. A. Highway Express, Inc.,* 204 S. C. 433, 29 S. E. (2d) 760; *Bowers v. Charleston & W. C. R. Co.,* 210 S. C. 367, 42 S. E. (2d) 705; *Haselden v. A. C. L. R. Co.,* 214 S. C. 410, 53 S. E. (2d) 60; *Jennings v. McCowan,* 215 S. C. 404, 55 S. E. (2d) 522.

No brief recital of the injuries and after-effects sustained by the minor plaintiff, as shown by the record, would suffice to fully portray the extent thereof. Briefly, however, the minor plaintiff was thirteen years of age at the time of injury, in excellent health, and a boy of considerable athletic ability. His injuries included a severe cerebral concussion; the loss of six teeth, requiring a permanent plate which must be changed as he grows older; a compound fracture of the jawbone, which was fragmented into multiple pieces, which was repaired by wiring the same together with the probability of infection therefrom later and an operation as a result thereof; a compound fracture of the upper part of the jaw through the palate and floor of the brain; the loss of one-third of his tongue, which, along with the loss of teeth, caused some speech impairment; fractures of the left femur and of the humerus of one arm, which fractures required wiring and pins to repair; multiple lacerations of the lips causing permanent scars which might later be removed by plastic surgery; damage to his nose making it necessary to rebuild the nose with a graft of bone taken from a rib; a laceration of the right thigh over the kneecap ten centimeters in length; and the complete destruction or stoppage of the tear ducts causing eye infection and making necessary a future operation or operations to correct the same.

The evidence further reflects substantial pain and suffering. He was in the hospital immobilized and in traction for some seventy-three days, following his injury, and at the time of the trial, on October 24, 1961, he had not yet been able to return to school. At that time, the minor plaintiff, despite excellent services rendered by medical experts, was still far from recovered and faced with a disheartening future because of facial disfigurement causing his eyes to be farther apart than normal, with some personality change as a result; a curved and weak nasal septum likely to result in future sinus trouble and headaches, and rendering him susceptible to additional nasal trouble from any blow or injury in the area; one or more operations to restore the tear ducts with each operation requiring a tube to be worn through the nose for some six weeks and the ten to fifteen per cent possibility that any such operation would not be successful, leaving him with a susceptibility of further eye infection; the susceptibility to arthritis in the areas of his fractures; the necessity of wearing false plates for the remainder of his life, and the probability of infection from the wires in his fractured jaw requiring further operations.

The foregoing concise recital, as above stated, does not fully portray the nature and extent of the injuries, pain and suffering sustained and endured by the minor plaintiff as reflected by the record. Suffice it to say that his injuries were most severe and substantial, and at least some of them, of necessity, involved permanent after-effects.

With respect to the amount of punitive damages, the record reflects that the defendant here had a net income for the years 1959 and 1960 in excess of ten million dollars per annum, and at the end of 1960 had an undivided surplus of over two hundred forty million dollars. As the trial judge aptly stated in his order, punitive damages would serve no useful purpose unless they were awarded in an amount commensurate with the defendant's financial position and ability to pay. He, nevertheless, reduced the verdict for punitive damages to twenty-five thousand dollars.

While the verdict here as to both actual and punitive damages is substantial, we cannot say on the record before us that it was in any sense so excessive as to justify a holding by this court, under the applicable principles of law, that the trial judge abused his discretion in refusing to grant a new trial on the ground of excessiveness.

The appellant challenges the instructions to the jury by the trial judge in several particulars.

At the request of the plaintiffs, the jury was charged as follows:

"I charge you that the duty of a traveler to look and listen for an approaching train when he knew of the existence of the crossing is very different from that of the traveler who is ignorant of the crossing's existence. Without minimizing the duty of a person approaching a railroad crossing to employ all of his senses for the purpose of ascertaining whether or not it is safe to cross, such duty does not exist until the traveler has knowledge, or by the exercise of reasonable care, should have knowledge that there is, in fact, a crossing. Otherwise, a person traveling upon a highway would be under a continuous duty to look and listen for a train regardless of where he was with reference to a railroad crossing."

The quoted charge was apparently taken almost verbatim from the case of *John F. Ivory Storage Co. v. A. C. L. R. Co.*, 187 Va. 857, 48 S. E. (2d) 242, and the case of *Stephenson v. Grand Trunk Western R. Co.*, 7 Cir., 110 F. (2d) 401, 409, 132 A. L. R. 455, therein cited.

When given an opportunity to except, appellant's only exception to the quoted charge was that it stated the law of Virginia and not the law of South Carolina. We think this exception was too general and was not sufficiently explicit to preserve any question thereabout, but even if it were, we see no error in the charge. While no South Carolina decision has come to our attention in which the precise charge here objected to

was approved, we think the principles of law set forth therein are sound and in keeping with the principles of prior decisions of this court. A portion of the charge is set forth as a general rule of law in 44 Am. Jur. 812, Railroads, Section 558, and further authorities supporting the legal principles involved can be found in *Harwood v. Missouri Pacific R. Co.,* 118 Kan. 332, 234 P. 990; 40 A. L. R. 1305; *Kindt v. Reading Co.,* 352 Pa. 419, 43 A. (2d) 145, 162 A. L. R. 1; *Davidson v. Seaboard Air Line R.,* 170 N. C. 281, 87 S. E. 35; *Callaway v. Adams,* 252 Ala. 136, 40 So. (2d) 73; *Johnson v. Chicago & Northwestern Rwy. Co.,* 71 S. D. 132, 22 N. W. (2d) 725. The appellant cites no authorities to the contrary.

When the jury was excused, appellant's counsel requested that the judge charge, *inter alia,* "that the jury is under the duty to weigh the facts as they come from that stand;" and it is now alleged that the trial judge erred in refusing to recall the jury and make a further charge in accordance with that particular request. There is no merit whatever in this contention. It is sufficient to say that the requested additional charge was already fully embodied in the charge already given by the trial judge.

The only other exception to the charge of the trial judge before us is based on the following objection by appellant at the conclusion of the charge.

"We object to the portion of the charge numbered 11, the impairment of the ability to work. There is no impairment of ability to work and earn a livelihood in this case."

The portion of the charge referred to was as follows:

"I charge you that in determining the amount of compensation which may be awarded to the plaintiffs for the personal injuries inflicted on the plaintiff, Dennis Gary Doremus, it is proper to take into consideration the physical and mental pain and suffering endured and such pain and suffering as is reasonably certain will of necessity result in the future from the injuries, the impairment of the ability to

work and earn a livelihood, and the character of the injuries and the amount that would make this injured party whole as respects the permanent injuries, it being necessary that said damages be those which proximately flow from said injuries."

It will be noted from the quoted objection that the ▉▉▉▉ appellant did not request any amplification or clarification of the judge's charge. While the appellant might have requested the trial judge to clarify the charge and instruct the jury that any impairment of earning capacity would have to be limited to any impairment in the future after the minor plaintiff had attained his majority, this the appellant did not do, but rather contended that there was no evidence that the plaintiff was in any manner impaired in his ability to work. Loss or impairment of earning capacity resulting from personal injuries is a proper element of compensation and the fact that the injured party was unemployed at the time of the injury complained of does not deprive him of the right to receive damages for such impairment. *Matthews v. Porter,* 239 S. C. 620, 124 S. E. (2d) 321. The record here does not contain any evidence, opinion or otherwise, as to the extent, if any, the earning capacity of the minor plaintiff will be impaired upon his attaining his majority. The very nature, however, of his injuries, and the after-effects herein above cited, constituted sufficient evidence upon which a jury could infer that the earning capacity of the minor plaintiff will, with reasonable certainty, be to some extent impaired. The fact that difficulty may be involved in determining future damages, does not prevent the granting of such relief where damages with reasonable certainty and probability will follow. *Winchester v. United Ins. Co.,* 231 S. C. 483, 99 S. E. (2d) 34.

"An infant will not be denied recovery for loss of earning power or his prospective loss of earnings after he has reached his majority because his time has been spent in school or he has never earned anything." 15 Am. Jur. 502, Damages, Section 91.

The Supreme Court of Georgia, in the case of *J. S. Betts Co. v. Hancock,* 139 Ga. 198, 77 S. E. 77, quoted with approval and followed the following quotation from *Buckry-Ellis v. Missouri Pac. Ry. Co.,* 158 Mo. App. 499, 506, 138 S. W. 912, 913:

"As to infants of tender years, it is impossible to give evidence of the pecuniary value of such probable loss; and therefore the rule is that the question of damages for loss on account of impairment of future earning capacity is left to the sound judgment, experience and conscience of the jury, without any proof thereof whatever."

The weight of authority throughout the country seems to us to support the foregoing proposition. *McCallan v. Hope Natural Gas Co.,* 93 W. Va. 426, 117 S. E. 148; *Weaver v. Wheeling Traction Co.,* 91 W. Va. 528, 114 S. E. 131; *Detroit Taxicab & Transfer Co. v. Pratt* (C. A. 6), 2 F. (2d) 193. In the last cited case, with respect to impairment of the future earning capacity of a permanently injured minor, the court said:

"* * * the jurors would not be materially aided by opinion evidence, even if it were possible for any one to qualify as an expert on that subject. An estimate thereof would be a mere matter of opinion, and no better than the judgment of the jurors who were fully advised of the facts and circumstances upon which expert opinion evidence, if available, could be predicated. This matter is one that comes under the equal observation of men and women in the ordinary walks of life."

The only remaining contention of the appellant is that the trial judge erred in allowing B. E. Fallaw, a highway patrolman, to testify concerning the relationship between skid marks and the speed of the automobile in which the minor plaintiff was riding as a passenger.

Sgt. B. E. Fallaw testified that he had been employed by the State Highway Patrol for twenty-four years and that for the preceding eighteen years he had been connected with the

Driver Educational Program, in connection with which he had conducted many tests to determine the relationship between speed and tire marks in bringing an automobile to a stop. He further testified that he had inspected the site of the collision here involved and he had conducted the tests about which he testified on dry road surfaces similar to that found at the scene of the collision, using Chevrolet automobiles with good tires and brakes. There was evidence that the automobile in which the plaintiff Doremus was riding was a 1959 Chevrolet with good brakes and good tires, and that the morning on which the collision occurred was fair and nice, and that there had been no change in the roadbed from the date of the collision until the date it was seen by Sgt. Fallaw. The evidence was that the brake or tire marks made by the automobile in which the minor plaintiff was riding were ninety-five feet in length, and that said automobile had come to either a complete stop or was just about stopped when struck by the defendant's engine.

In answer to a hypothetical question, Sgt. Fallaw was allowed to testify that the tests he had conducted under substantially identical facts, indicated that an automobile leaving ninety-five feet of tire marks would have been traveling at a speed of forty miles per hour when the brakes were applied sufficiently to start the marks. He further testified that distances for stopping would vary only slightly with different model cars or such things as slick places or dirt in the highway.

We do not understand the appellant to challenge Sgt. Fallaw's qualifications as an expert. It is contended, however, that his testimony was inadmissible under the holding of this court in *Thompson v. S. C. State Highway Dept.*, 224 S. C. 338, 79 S. E. (2d) 160, and *Willard v. McCoy*, 234 S. C. 317, 108 S. E. (2d) 113. The factual situations involved in the cited cases are readily distinguishable from the case now under consideration. In each of those cases a witness gave his opinion of the speed of an automobile at

the time of the accident based, not on skid marks or previous tests, but on completely different factors.

In the very recent case of *McDowell v. Floyd et al.*, 240 S. C. 158, 125 S. E. (2d) 4, we laid down the rule which must be complied with before evidence of an experiment out of court can be introduced in the trial of a case. There, we said:

"One desiring to make an experiment in court or to introduce evidence of an experiment made out of court should first show that the experiment is to be made or was made, as the case may be, under conditions and circumstances similar to those prevailing at the time of the occurrence involved in the controversy; otherwise, the courts will not, as a general rule, permit the making of experiments or the introduction of evidence thereof. It is not, however, necessary in order to render experiments permissible or to admit evidence of experiments made out of court that the conditions be identical with those existing at the time of the occurrence; it is sufficient if there is a substantial similarity. Minor variations in the essential conditions go to the weight rather than to the admissibility of the evidence. If, on the other hand, the requirement of substantial similarity is not satisfied, the courts have uniformly refused to admit experimental evidence. * * *"

From the record before us we are convinced that the tests performed by Sgt. Fallaw were performed under conditions sufficiently and substantially similar to those existing at the time of the occurrence and that any minor variations in conditions went only to the weight, rather than to the admissibility of the evidence. We conclude that the trial judge wisely exercised his discretion in allowing the introduction of this evidence.

The admission of testimony of a traffic expert establishing the relationship between tire and skid marks and speed, as was done in the instant case, has met with almost universal approval. From an annotation on this subject in 123 A. L. R. (2d) 112, we quote the following:

"A witness qualified as an expert may give his opinion based upon the length of skid marks as to the speed of an automobile involved in an accident."

A related annotation as to admissibility of such evidence is found in 78 A. L. R. (2d) 218:

"Evidence of skid marks furnishes proper ground for an expert to give his opinion as to the speed of an automobile when its brakes were applied." Blashfield, Cyclopedia of Automobile Law and Practice, Volume 9C, Sec. 6238, page 417.

Having discussed and disposed of all of the questions presented by appellant's exceptions, it is our conclusion that the rulings of both the resident judge and the trial judge should be affirmed.

TAYLOR, C. J., and Moss, LEWIS and BRAILSFORD, JJ., concur.