Fidele AMAR, Plaintiff,

v.

GARNIER ENTERPRISES, INC., et al.,
Defendants.

Civ. A. No. 66–340.

United States District Court
C. D. California.

Nov. 10, 1966.

Schumacher & Hale, Frederick R. Schumacher, Los Angeles, Cal., for plaintiff.

Louis Lee Abbott, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

The plaintiff, a resident of Idaho, seeks to bring this shareholder's derivative action against a California corporation and its officers, all of whom are residents of California. The defendants successfully moved to dismiss the action on the basis of the original complaint. They now similarly attack the second amended complaint and also have moved for summary judgment.

*The Background Facts.* The pertinent facts, as determined from the complaint, the records of the California state courts, the deposition of the plaintiff, and several affidavits, are summarized (and substantially simplified) as follows:

Constance Garnier, a woman of advanced years, owned a valuable parcel of land in Southern California. In 1937 she placed the land in trust, one-third for the benefit of her son, Camille; one-third for the benefit of her daughter, June; and one-third for her own benefit. Constance was and is the trustee, and the trust is irrevocable with respect to the interests of Camille and June. In 1948 Constance withdrew her undivided one-third interest from the trust property and transferred it to Garnier Enterprises, Inc., a California corporation that she formed for such purpose (the Corporation). She caused one thousand shares of the Corporation to be issued, five hundred of which she distributed by gifts among Camille and his then wife and children; four hundred went to June and her family; and Constance kept one hundred shares.

The real property had been and was being operated as a ranch, and after the Corporation was formed, it, with its one-third interest in the land, and Con-

stance, as the trustee *holding the remaining two-thirds,* formed a partnership which continued to operate the ranch under the name of San Jose Ranch Company (Ranch).

From the time of the formation of the partnership, in about 1948, until 1959, Camille acted as managing agent of the Ranch and was in full charge of its operations. In the latter year, Constance terminated Camille's authority to act on behalf of Ranch, and she caused his removal as an officer of the Corporation. There ensued a virtual deluge of litigation in the Los Angeles County Superior Court (thirty-one cases) in which Camille sought and still seeks to regain control over the activities of Ranch and the Corporation; and Constance and June seek, on behalf of the trust and the Corporation, recovery and accounting from Camille for alleged misappropriation of funds and other abuses of his fiduciary responsibilities.

The efforts of Constance and June in this litigation have been frustrated by Camille's amazingly persistent refusal to complete the giving of his deposition. This persistence, which still endures, has resulted in his having served a twenty-day jail sentence for contempt and a court enforced proscription against his engaging in any further discovery for his own purposes until he shall have completed his deposition.

Camille has displayed an extremely active desire to accomplish discovery from his adversaries, despite the above mentioned proscription, and much of the litigation has stemmed from his attempts to fulfill such desire. However, on each of his many encounters in the state court, whether in furtherance of his efforts to obtain discovery, or in connection with other interlocutory battles, the rulings of the superior court judges have been against him. On thirteen occasions, he has sought relief from the California appellate courts, and there too he has been completely unsuccessful.

Of the thirty-one cases filed in the superior court among the parties, three are reasonably illustrative and otherwise pertinent to the problem here concerned. Case No. 788,262 was brought on behalf of Constance, individually and as trustee, June and the Corporation. It charged Camille with substantial diversion of Ranch funds for his own purposes and other breaches of fiduciary duty. Camille cross-complained against Constance and June, alleging, among other things, mismanagement of the trust and failure to cause it to produce income, improper distribution of trust funds by Constance to herself and June by way of salaries, and improper payment of trust funds to attorneys to cover professional services rendered personally to Constance and June. An accounting by Constance and June was sought.

In case No. 810,831, Camille as plaintiff seeks involuntary dissolution of the Corporation, and in case No. 810,833 he prays for the removal of Constance as trustee.

Orders to show cause why receivers should not be appointed were issued in each case, and following hearing the court ruled against receivership and directed that the three above mentioned cases be consolidated for trial.

Because of Camille's persistent refusal to complete his deposition, as hereinabove mentioned, in each of the three cases judgment was entered denying all relief sought by him. In all other respects, the cases are still pending.

Having been denied relief and the use of discovery processes in the California courts, Camille determined to try his luck here, and he accordingly filed an action in this court (case No. 65–1531–CC) against his usual adversaries, including particularly his mother and sister and the Corporation. Many of the same allegations were made that permeated his pleadings in the state court. On January 4, 1966, Judge Carr granted the defendants' motion to dismiss the action for lack of jurisdiction.

Less than two weeks later (on about January 13) Camille went to Idaho and visited his cousin, Fidele Amar. In the course of his two-day stay, Camille talked with Amar about the litigation with his family and lamented the fact that for the past two and one-half years he had been "stymied and stopped" in his efforts to gain access to the books and other information concerning the operations of the Corporation and the Ranch. He also mentioned that if there were a new stockholder of the company, the latter might be able to get into such records. Before Camille's visit terminated, the two cousins had reached an understanding that Camille would assign to Amar sixteen of his corporate shares at a stated price of $650.00 per share (a total of $10,400.00), and that Amar would institute a new legal action against Camille's adversaries.

*The Commencement Of The Present Action.* On February 24, 1966, the present action was filed. Amar's complaint, in form of a shareholder's derivative suit, alleged that he had purchased sixteen shares of the Corporation on January 17, 1966. The allegations of mismanagement of the Corporation and misappropriation of its funds were substantially similar to the contentions that Camille had made in the California litigation. The only thing new was the assertion that the Corporation had entered into a contract to sell its real property; that the price, terms and conditions of the sale were unreasonable and detrimental to the shareholders; and that this court should enjoin such sale. The attorney (Schumacher) that had regularly represented Camille in the state court actions became and still is the principal attorney of record for the plaintiff in the present suit.

On May 3, 1966, Judge Crary, my colleague on this court, granted the defendants' motion to dismiss the amended * complaint because it failed to assert that Amar was a registered shareholder, which is an essential allegation in a shareholder's action under California law (Cal.Corp.Code section 834(a) (1)). At the time of commencement of the action, Amar, in truth, was not a registered shareholder. He did not attain this status until April 15, 1966, the delay having been due largely to the lack of enthusiasm that the Corporation displayed in registering the change of ownership of the sixteen shares from Camille to Amar and in issuing the new certificate.

On May 20, 1966, Amar filed his second amended complaint, in which he recited the fact that he had become a registered shareholder on April 15. He otherwise made the same allegations and sought the same relief as in the original complaint filed on February 24, 1966.

*The "Relation Back" Doctrine.* The defendants now move to dismiss the second amended complaint on the same ground that they successfully urged against the earlier pleading. They point to Rule 15(c), Federal Rules of Civil Procedure, as requiring that an amended pleading relate back and speak as of the date of the original pleading. They then argue that since Amar was not a registered shareholder on February 24, 1966, no amendment to show subsequent happenings can cure the fatal defect in his pleading. The defendants say, in effect, that the plaintiff filed his action several weeks too soon, and that his only recourse is to allow the case to be dismissed and start over with a new filing date for his complaint.

■ California Corporations Code section 834(a) provides that

"No action may be instituted or maintained in right of any * * * corporation * * * by the holder * * * of shares * * * unless * * * The plaintiff alleges in the complaint that he was a * * * registered shareholder * * * at the time of the transaction or any part thereof of which he complains * * *."

---

* The reasons for the first amendment need not be discussed here.

It seems quite evident that the obvious purpose of this statute (and of the comparable and less restrictive provisions of Rule 23.1, F.R.Civ.P.) can be fully served if a plaintiff is able to make the necessary allegations in his amended complaint, and I find nothing in Rule 15(c) that requires dismissal of the action simply because he could not use the word "registered" in his initial pleading.

■ The "relation back" doctrine of Rule 15(c) is concerned primarily with statutes of limitations problems, which have no bearing upon the present action, and there is no need to apply the Rule when to do so " * * * would produce a result wholly foreign to its remedial purpose." United States for Use of Atkins v. Reiten, 313 F.2d 673, 675 (9th Cir. 1963).

Furthermore, as the last mentioned case pointed out, irrespective of the designation, we may treat the plaintiff's latest pleading as a supplemental complaint, in which, under Rule 15(d), assertion of events occurring after the filing of the original complaint is clearly appropriate.

Accordingly, the defendants' "relation back" contention in support of their motion to dismiss is rejected.

■ *The Issue Of Collusion.* Rule 23.1, F.R.Civ.P. provides that in a shareholder's derivative action the complaint must allege " * * * that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have." The defendants move for summary judgment on the ground that the action is collusively brought in violation of the Rule, and in violation of 28 U.S.C. section 1359, which asserts that "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Thus is raised an issue as to the jurisdiction of this court to entertain the case. It now becomes the duty of the court to ascertain the facts pertinent to the question and decide accordingly. In making such determination, the court may properly consider the pleadings, affidavits, depositions and other documentary evidence brought to its attention. Williams v. Minnesota Mining, etc., Co., 14 F.R.D. 1 (S.D.Cal.1953); Steinberg v. Toro, 95 F.Supp. 791 (D. P.R.1951). All of this I have done and on the basis thereof am convinced that the action is collusive, that the real plaintiff is Camille, and that the transactions under which Amar became a registered shareholder were primarily for the purpose of permitting him to sign the complaint. These conclusions are impelled by the following factors:

1. The resourceful persistence with which Camille has sought, in the state courts and in the earlier case filed in this court, to prosecute litigation against his mother and sister despite all obstacles and adverse decisions, in itself suggests that this action is but another battle in the same campaign.

2. Camille's conversation with Amar, at the time the transfer of shares was agreed upon, disclosed Camille's desire to find a new shareholder who could pursue the litigation, presumably in federal court because of diversity.

3. Camille insisted that he would sell only sixteen shares, which, at the agreed price of $650.00, constitutes the minimum number of shares that would meet the $10,000.00 jurisdictional requirement for an action in federal court.

4. Even at the time his deposition was taken, more than two weeks after this action was filed, Amar knew substantially nothing about the facts pertinent to the litigation which were alleged in such detail in his verified complaint. For example: he was not aware of the nature or extent of the Corporation's interest in the land; he had no idea as to the value of the shares or of the land; and although the complaint asserted that the Corporation was proposing to sell

the land at terms that were unreasonably detrimental to the stockholders, he did not know what any of the terms of the proposed sale were.

5. Amar's testimony in his deposition as to what he actually paid Camille at the time of the assignment of the shares, and how such payment was made, was so equivocal and contradictory that I have grave doubt that he made any payment whatever. He said that he believed that the down payment was $2,400.00 but could not remember when he paid it; he testified that he made the payment by check, but could not say on which bank it was drawn, nor did he have a cancelled check or stub, and he was unable to remember whether or not he had written on the check anything to identify the transaction. Later, after having had his memory "refreshed" by his attorney, he changed his testimony and said that only $500.00 of the $2,400.00 payment was by check, and the balance in cash. He never explained where he obtained the cash, and the check had not been produced by the time this memorandum was almost ready to be filed, on November 7, 1966. On that date, an affidavit by Schumacher was submitted which was accompanied by a receipt for $1,900.00 in cash signed by Camille and a cancelled check drawn to his order by Amar in amount of $500.00. Both were dated January 17, 1966, but the bank stamp on the reverse side of the check shows it to have been deposited on March 16, five days after the deposition, and two months after the transaction in which it is alleged to have played a part. The doubt expressed in the first sentence of this subparagraph 5 has not been dispelled by this latest submission.

6. Although a written assignment of the shares was dated January 17, 1966, and signed by Camille, Amar first saw it when his deposition was taken on March 11, 1966, long after the date of the purported transfer and down payment.

7. Particularly in light of the foregoing, I cannot accept the contention that Amar is and would be in control of the extensive litigation that the complaint seeks to institute. Certainly, he is not paying for it and would be out of his mind to undertake to do so, in view of the relatively small size of his interest, if any. At the taking of Amar's deposition, Schumacher steadfastly refused to reveal the contents of a document he referred to as his fee agreement with his client, which, of course, is his prerogative. However, he now presents a copy of a paper, dated February 11, 1966, and signed by him and Amar, in which the latter authorized him to commence, against Constance et al, " * * * such litigation * * * as you may deem necessary and proper in order to best represent my interests * * * "; assigned to the attorney a fee of 10% of the damages recovered "for me"; and expressly disclaimed any other liability for legal fees to Schumacher. The attorney for the plaintiff emphasizes that this type of action, if successful, will result in an award of attorney's fees, which makes it unnecessary for the plaintiff to commit his own funds. It is possible that Schumacher expects and is assured no other compensation. However, the fact remains that Amar is investing no money in the litigation and has far less at stake in the outcome than do either Camille or Schumacher, all of which provides further indication as to wherein lies the control of the plaintiff's case.

The plaintiff does not deny that Camille's purpose in making the transfer of shares was to permit this action to be brought, but contends that the motive of the transferor makes no difference, and cites McDonald v. Smalley, 1 Pet. 620, 7 L.Ed. 287 (1828). This may be so when the transfer is real, complete and bona fide; but the motive of the transferor is an important consideration in determining whether the transfer actually was real, complete and bona fide;

here, under all of the circumstances, I am not persuaded that it was.

The plaintiff points out that jurisdiction has been allowed where the nonresident has been solicited to bring the suit and has been indemnified against court costs, citing Wheeler v. City and County of Denver, 229 U.S. 342, 33 S.Ct. 842, 57 L.Ed. 1219 (1912); and Allstate Insurance Co. v. Lumbermens Mutual Casualty Co., 204 F.Supp. 83 (D.Conn.1962). But in each of those cases, the nonresident plaintiff had an interest in the subject matter of the litigation (as a taxpayer or trust beneficiary, respectively) before such solicitation took place. Here, the solicitation was that Amar become a shareholder so that he might bring the diversity action.

The plaintiff contends that Amar's lack of knowledge concerning the facts alleged in the complaint is also irrelevant. The plaintiff relies upon Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807, rehearing denied 384 U.S. 915, 86 S.Ct. 1333, 16 L.Ed.2d 367 (1966), in which a woman shareholder, who had little education and limited ability to read English, signed the verification of a complaint as plaintiff in a derivative action without having personal knowledge of the facts alleged, but in reliance upon the investigation made by her son-in-law and her attorney. The Supreme Court reversed the circuit court and held that these circumstances did not show a violation of the verification requirement of Rule 23(b) (as it read before the amendments effective July 1, 1966). However, the investigation was made for Mrs. Surowitz by her own attorney, and for her benefit in light of the fact that she was already a shareholder. The contrast with the case at hand is readily apparent.

For the reasons hereinabove set forth, the present action is found to be collusive within the meaning of 28 U.S.C. section 1359 and Rule 23.1, F.R.Civ.P.

■ *The Plaintiff As A Representative Shareholder.* Rule 23.1, F.R.Civ.P.

provides that "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders * * * in enforcing the right of the corporation * * *." The other shareholders are Constance and her direct descendants, or the spouses of such descendants, and they all have been shareholders from about the time of the inception of the Corporation. They all are residents of California and are parties to the pending state court action in which Camille seeks dissolution of the Corporation (case No. 810,831). As is hereinafter discussed, the court in that case has full jurisdiction to accomplish all of the relief sought by the present action. Most of the transactions of which Amar complains in his pleading in this action occurred before he became a shareholder, and his ability to prosecute with respect to such matters is at least doubtful, in light of Rule 23.1; the other shareholders face no such problem.

It is my conclusion that none of the other shareholders need the prosecution of a derivative action in order for their interests to be represented, and that even if they did need such representation, the plaintiff is less able to provide it than any of them are for themselves.

■ *The Disposition Of This Action.* It follows from the foregoing findings with respect to collusion and lack of representative capacity that the action fails to meet the requirements of Rule 23.1 and cannot be maintained. 28 U.S.C. section 1359 provides that under such circumstances this court has no jurisdiction to try the action, and it has been authoritatively stated that " * * * the court is under the duty to dismiss the action if at any stage of the proceeding it becomes apparent that jurisdiction is lacking." Bradbury v. Dennis, 310 F.2d 73, 74 (10th Cir. 1962). Adhering to such admonition, and motion therefor having been made by the defendant, the action is hereby dismissed pursuant to

Rule 12(h) (3), F.R.Civ.P. Inasmuch as matters outside the complaint have been submitted by both parties and considered by the court, it appears that the granting of the defendants' motion for summary judgment may be the more appropriate remedy. Accordingly, and as an alternative disposition, such motion is granted.

■ *Abstention By This Court Is Mandatory.* Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1938) asserts a rule to be followed when actions involving the same subject matter are pending simultaneously in state and federal courts:

"* * * if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals." (Page 466, 59 S.Ct. pages 280, 281.)

The litigation there concerned involved the control and management of a trust. The Supreme Court opinion pointed out that proceedings concerning such matters were quasi in rem, and that the state court "* * * could not effectively exercise the jurisdiction vested in it, without a substantial measure of control of the trust funds." (Page 467, 59 S.Ct. page 281.) The opinion thereupon ruled that the United States District Court was without jurisdiction of the suit subsequently brought for the same relief.

The same principles are applicable here. California superior court case No. 810,831 (which is still pending and in which Camille is a plaintiff and Amar has been served as a defendant) requests the appointment of a receiver for the Corporation and its involuntary winding up and dissolution. Under California law, at any time after such an action is filed, the court has jurisdiction to "* * * appoint a receiver to take over and manage the business and affairs of the corporation and to preserve its property pending the hearing and determination of the complaint for dissolution." (Cal.Corp.Code, section 4656.)

After such hearing, "* * * the court * * *, with or without winding up and dissolution, may make such orders and decrees and issue such injunctions in the cause as justice and equity require." (Cal.Corp.Code, section 4657.)

It is clearly apparent, from these and other related California statutes, that the proceedings in case No. 810,831 are quasi in rem to the same extent as were those involved in *Princess Lida*. It follows that this court has no jurisdiction to proceed in the matter.

■ Under such circumstances, it would appear to be discretionary with the court whether to dismiss the action or retain jurisdiction pending the completion of the state court litigation. Tomiyasu v. Golden, 358 F.2d 651 (9th Cir. 1966). I believe that, under all of the hereinabove discussed circumstances, the former alternative is the more appropriate, and I accordingly find an additional basis for dismissing the present action.

*Findings And Judgment.* Judgment of dismissal and an order granting the defendant recourse to the security previously posted by the plaintiff for costs

and attorney's fees will be executed contemporaneously with the filing and distribution of this memorandum. To the extent, if at all, that findings of fact and conclusions of law are required under the Rules, this memorandum is intended to fulfill such obligation (see Rule 52(a)).