Cecil ARANT and Tom Drake,
Plaintiffs,

v.

T. M. STOVER, Defendant.

Civ. A. No. 69-665.

United States District Court
D. South Carolina,
Rock Hill Division.

Dec. 9, 1969.

**146**

Henry Hammer, Columbia, S. C., and James H. Howey, Lancaster, S. C., for plaintiffs.

Richard E. Richards, Lancaster, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiffs move to remand this case to the Court of Common Pleas for Lancaster County, South Carolina, from whence it came by removal procedure. Decision pivots on plaintiffs' claim that complete diversity[1] does not exist because plaintiff Tom Drake and defendant T. M. Stover are residents of Alabama. Admittedly, neither Tom Drake, nor anyone in whom he, at the time, had an interest or kinship, was involved in the accident[2] of January 12, 1965. At some later date Arant assigned an 1/100th interest to Drake, who, as an Alabama resident, defeats diversity jurisdiction *if the cause of action is assignable* [emphasis added] under South Carolina law.[3]

Cecil Arant and Tom Drake allege, in their complaint, that negligence of defendant was a proximate cause of permanent injuries to Hessie W. Arant, Cecil's wife. They allege Cecil will thus be deprived of the services, social relationship, and consortium[4] of his wife, and will be responsible for expenses of her maintenance, including doctor and hospital bills.[5]

---

1. 28 U.S.C.A. § 1332—citing Godfrey v. Terry, 97 U.S. 171, 24 L.Ed. 944 (1877).

2. This and other cases, pitched on negligence, arose out of a claimed two-car collision.

3. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938). There is no federal common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in nature or "general", whether they be commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State, and whether the law of the State shall be declared by its legislature in a statute or by its highest court in a decision is not a matter of federal concern.

4. "Consortium" is a right which law recognizes in a husband arising from the marital union to have performance by wife of all those duties and obligations in respect of him which she undertook when she entered into the marriage relation, including right to conjugal fellowship of the wife, her company, cooperation and aid in every conjugal relation, fellowship and assistance of wife, and comfort in her society as to which right of husband is peculiar and exclusive. Shreve v. Faris, 144 W.Va. 819, 111 S.E.2d 169, 173. (Headnote 1 of S.E.Rpt.)

5. When a wife receives personal injuries proximately caused by the actionable negligence, recklessness and willfulness of another, a cause of action arises in her favor for her personal injuries. However, in such an action the amount paid for medical care and treatment by her husband is not an element of damage and the husband has a cause of action to recover for any expenses which he has incurred for her care and treatment, as a result of personal injuries caused and occasioned by the negligence of a third party; and a cause of action for the recovery of consequential damages for the loss of his wife's society, companionship and services, all of which are comprehended by the term "consortium." Cook v. Atlantic Coast Line Ry. Co., 196 S.C. 230, 13 S.E.2d 1, 133 A.L.R. 1144; Vernon v. Atlantic Coast Line Ry. Co., 218 S.C. 402, 63 S.E.2d 53; Brown v. Finger, 240 S.C. 102, 124 S.E.2d 781; Sossamon v. Nationwide Mutual Ins. Co., 243 S.C. 552, 135 S.E.2d 87; Hughey v. Ausborn, 249 S.C. 470, 154 S.E.2d 839, 841, 25 A.L.R.3d 1406.

To determine whether diversity exists, this court must first decide whether the causes of action for loss of consortium and/or maintenance costs are ones that survive.[6] Next comes the test of assignability which is determined by whether the cause of action would survive in the event of death. McWhirter v. Otis Elevator Co., 40 F.Supp. 11 (D.C.S.C.1941); Hair v. Savannah Steel Drum Corp., 161 F.Supp. 654 (E.D. S.C.1955); Doremus v. Atlantic Coast Line Railroad Co., 242 S.C. 123, 130 S.E. 2d 370 (1963). The general rule is spelled out in 6 C.J.S. Assignments § 32, page 1080 (6 C.J.S. page 1080):

As a general rule, survival is the test of assignability of a right of action ex delicto—if a right of action arising out of tort is of such a nature that, on the death of the party entitled to sue, it would, either by stat-ute or in accordance with the rules relating to the survivability of actions ex delicto in general, as shown in the title Abatement and Revival § 138, survive to his personal representative, it may be assigned; but, if the right of action is such that it would not survive, it may not be made the subject of a valid assignment.

South Carolina, by statute,[7] has provided for survival of causes of action as follows:

Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal property shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, any

6. Cook v. Atlantic Coast Line R. Co., 196 S.C. 230, 13 S.E.2d 1, 6 and 7, 133 A.L.R. 1144 (1941):

In our opinion, after reviewing a multitude of cases, the husband's right to the wife's services, aid, comfort, society and companionship remain despite the so-called Married Women's Acts. He is still under duty to support her, and is entitled to the services which she may choose to perform and customarily does perform, and this right of action remains in him, even though a married woman is entitled to her own property, may contract, may sue and be sued as femme sole; and although she may recover in her own name her own earnings.

The reasoning underlying the authorities to which we have referred is well illustrated by what the Court said in Denver Consol. Tramway Co. v. Riley, 1899, 14 Colo.App. 132, 59 P. 476, 479: "The companionship and society of a wife are not articles of commerce. They cannot be weighted or measured. They are not bought and sold, and no expert is competent to testify to their value. The consideration upon which they are bestowed is not pecuniary. Yet the husband is entitled to compensation in money for their loss, and the amount of that compensation is to be determined by the jury, not from evidence of value, but from their own observation, experience, and knowledge, conscientiously applied to the facts and circumstances of the case. So, also, in relation to the services of the wife.

The wife does not occupy the position of a servant, and her services to her husband are not those of a servant. She makes his home cheerful and inviting, and ministers to his happiness in a multitude of ways outside of the drudgery of household labor. All the work of the house may be done by hired employes, and her services still give character to the home. They are not rendered in accordance with set rules. They are not repeated in regular order from day to day They have their source in the thoughtfulness of the wife, and her regard for her husband; and no witness is qualified to define them, or reduce them to a list, or say what they are worth. So that their value must also be estimated by the jury."

\*  \*  \*  \*  \*

It follows under the majority rule, in which we concur, that the husband is entitled to recover the value of those services of his wife which he has lost, including the loss of his wife's society and companionship in the home—all of which are comprehended by the term "consortium." He is also entitled to recover for any expenses which he has incurred for her care and treatment because of illness or bodily harm suffered by her, and for any medical expenses which he has incurred. See especially Coulter v. Hermitage Cotton Mills, 112 S.C. 93, 98 S.E. 846; Priester v. Southern R. Co., 151 S.C. 433, 149 S.E. 226.

7. Section 10–209, South Carolina Code, 1962 Annotated.

law or rule to the contrary notwithstanding.

■ It thus appears from a reading of the foregoing statute that causes of action for "injuries to the person" survive the deceased person, and thus, this brings the court to the crucial question of whether the consequential damages of a husband for loss of consortium and medical expenses sustained because of injuries to his wife are "injuries to the person" of the husband. The court can reason that if the husband suffered expenditures for his wife's illness, and thereafter died, his estate could make claim against the tort feasor for his loss. The South Carolina statute, supra, specifically includes (as surviving) "all injuries to the person." Injury is defined as:

> Damage or hurt done to or suffered by a person or thing; detriment to, or violation of, person, character, feelings, rights, property, or interests, or the value of a thing.[8]

A synonym for injury is "loss".[9] At law, the injury here may be classified as a civil injury, defined:

> (Civil injury) "Injuries to person or property resulting from a breach of contract, delict, or criminal offense, which may be redressed by a civil action.[10]

It follows that when injury produces a loss, whether that loss is expressed by payment or obligation for payment, for maintenance of the wife in her injured condition, or loss of consortium as a property and a feeling, redress for such injury (loss) survives under the South Carolina statute and the cause of action is assignable.

The husband's loss of consortium, of which he is deprived by a negligent in-jury to his wife, is a right which entitles him to damages for such loss. He is also entitled to recover any medical expenses he has incurred for her care and treatment, as a result of personal injuries caused and occasioned by the negligence of a third party. Sossamon v. Nationwide Mutual Insurance Co. (1964), 243 S.C. 552, 135 S.E.2d 87, 92.

■ Defendant further maintains that this action is barred by virtue of the wife's action [11], which, he contends, included claim for hospital and doctor bills. The wife could not recover for medical expenses which are the responsibility of her husband. South Carolina has ruled that an action brought by a wife to recover for her injuries is not res judicata of a subsequent action brought by the husband for expenses and loss of consortium. Priester v. Southern Railway Co. et al. (1929), 151 S.C. 433, 149 S.E. 226.

■ Having determined the claim(s) of the husband is assignable, the court examines the jurisdictional issue created by the assignment. Of paramount influence on this court's reasoning is the recent decision in Lester, Adm. v. McFaddon et al., 415 F.2d 1101 (4th Cir. 1969). In that case, counsel for a deceased mother and injured child recoiled from an adverse South Carolina state trial jury verdict in the child's negligence—damage pursuit; they procured the appointment of an Augusta, Georgia, attorney as Administrator of the Mother's estate for the purpose of bringing an action for wrongful death in the federal court's diversity jurisdiction (Columbia Division). The court affirmed the lower court, and refused to apply 28 U.S.C.A. Section 1359 [12] because of the possible injustice of a retrial on the facts, but announced that the Fourth

---

8. Webster, New International Dictionary of the English Language—2nd Edition—Unabridged—1946.

9. Ibid.

10. Black's Law Dictionary—Third Edition (1933).

11. The wife has previously sued, the case has been tried and is presently en route to appellate review.

12. A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

Circuit would adopt a "new rule" of strict construction despite previous rulings of a liberal nature. Specifically, the court adopted the reasons projected in McSparran v. Weist, 402 F.2d 867 (3rd Cir. 1968) cert. den. (Fritzinger v. Weist), 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217. Artificial creation or "manufacture" of diversity is improper and jurisdiction of the federal tribunal cannot be invoked upon that kind of diversity. 28 U.S.C.A. Section 1359 clearly applies to manufactured situations created by other means than assignments. *McSparran* projected:

> The multiplication of "manufactured" diversity cases is a reflection on the federal judicial system and brings it into disrepute.
>
> \*    \*    \*    \*    \*    \*
>
> It has often been said that in judging whether diversity of citizenship exists the courts will not inquire into the motive which led to the appointment of the personal representative. While, of course, the desire to obtain diversity jurisdiction is not in itself improper, nevertheless it is not irrelevant in the determination of the question whether the fiduciary is in fact a straw fiduciary whose citizenship is to be disregarded. Moreover, it is difficult to see how motive can be entirely ignored in ascertaining the purpose for which the representative is selected in view of the language of § 1359. The statute outlaws the creation of jurisdiction where a party has been improperly or collusively made or joined to invoke the jurisdiction of the court. While the statute does not ban the appointment of nonresident fiduciaries, the artificial selection of a straw representative who has no duty or function except to offer the use of his citizenship to create diversity in contemplated litigation is a violation of its provisions. This is made clear by the knowledge that the appointing court normally would not have designated him because of his absence from the jurisdiction and the consequent limitation of its control over him, all

of which can be put aside because there is at the time of appointment nothing for him to administer and he is not expected to exercise any real function.

402 F.2d 867, 873, 874 and 875.

█ Plaintiffs argue that the assignment, whether artificial or not, was not effected to *invoke* federal jurisdiction, but operates to defeat or avoid that forum. They insist that 28 U.S.C.A. § 1359 has no application as the statute does not deal with efforts to avoid the limited jurisdiction of the federal courts. This court agrees with that contention. 28 U.S.C. Section 1359 forbids the bringing into a federal court a local action normally triable in the state court, where the diversity is artificially or collusively created, but the statute does not apply to the converse.

*Lester* interpreted Black and White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426 and Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904, as having no bearing on efforts to invoke diversity jurisdiction. In *Black & White* the court found a transfer, for purposes of creating diversity jurisdiction was actual, not feigned or merely colorable. *Mecom* deals directly with the problem here.

In *Mecom,* an administratrix (widow) of an Oklahoma resident allegedly fatally injured by negligence of Louisiana resident defendants, brought suit in an Oklahoma court for wrongful death; she also brought suit for pain and suffering. By virtue of her appointment by an Oklahoma probate court as administratrix and the Louisiana residence of defendants, diversity was claimed, the case removed to federal court, and plaintiff(s)' motion to remand denied. Plaintiff then resigned as administratrix, and at her request, the Oklahoma probate court appointed a Louisiana citizen as administrator, and he became plaintiff in a suit for both wrongful death and pain and suffering. Defendants re-

moved to the federal court and plaintiff moved to remand, defendants answered claiming fraud and collusion on the part of the widow and her attorney. "A hearing was had at which it was proved that the motive for the appointment was to obviate the diverse citizenship of the parties which had justified the removal of the earlier suits, and that petitioner had, as a favor to the widow and her attorney, agreed to act as administrator." [13] The district court refused remand, the Circuit Court of Appeals affirmed [47 F.2d 28]; the Supreme Court reversed. This court recites the summation:

> The case comes to no more than this: There being, under Oklahoma law, a right to have a nonresident appointed administrator, the parties in interest lawfully applied to an Oklahoma court, and petitioner was appointed administrator, with the result that the cause of action for the wrongful death of the decedent vested in him. His citizenship being the same as that of one of the defendants there was no right of removal to the federal court; and it is immaterial that the motive for obtaining his appointment and qualification was that he might thus be clothed with a right to institute an action which could not be so removed on the ground of diversity of citizenship. [284 U.S. 190, 52 S.Ct. 87]

It is not for this court to say whether this assignment is artificial or collusive. Surely a 1/100th interest in an unlitigated claim is ethereal at best. The court would not encourage such practice. It is for the state court to validate or invalidate the assignment if it is challenged there. Heape v. Sullivan, 233 F.Supp. 127, 128 (E.D.S.C.1964).

In *Lester*, supra, the Fourth Circuit said of *McSparran*: "We adopt the reasoning of the majority opinion of the *en banc* court in that case." With such premise this court examines *McSparran*, to find that assignments are treated with far more liberality or leniency, than probate appointments. The language is significant:

> There are two obvious differences between the position of an assignee for the purpose of litigation and a straw fiduciary. In the former case there is an assignor in existence who might have sued in the state court in his own name, whereas in the case of an estate or a ward there is no one competent to sue prior to the appointment of a fiduciary. But since the appointee is in effect a straw party there is no reason why she should not be construed to come within the prohibition in § 1359 against invoking the diversity jurisdiction of a federal court by having one made a party improperly or collusively whether by assignment or otherwise. The second distinction in the case of a fiduciary is that he owes his position to a decree of a state court. We do not impugn this decree collaterally by refusing to recognize the citizenship of a straw guardian. Guardian he remains, but since he is acting in the capacity of a straw party we refuse to recognize his citizenship for purposes of determining diversity jurisdiction. His appointment may have authorized him to bring suit but his nominal status does not make his citizenship determinative for purposes of diversity. He occupies in effect the role of a guardian ad litem or a next friend or prochein ami whose function merely is to supply a party on the record responsible for costs. (Bertinelli v. Galoni, 331 Pa. 73, 75, 200 A. 58, 59, 118 A.L.R. 398 (1938), and whose citizenship would not be determinative of diversity jurisdiction.

It has often been said that in judging whether diversity of citizenship exists the courts will not inquire into the motive which led to the appointment of the personal representative. While, of course, the desire to obtain diversity jurisdiction is not in itself improper, nevertheless it is not irrele-

---

13. 284 U.S. 183, 185, 52 S.Ct. 84, 85.

vant in the determination of the question whether the fiduciary is in fact a straw fiduciary whose citizenship is to be disregarded. Moreover, it is difficult to see how motive can be entirely ignored in ascertaining the purpose for which the representative is selected in view of the language of § 1359. The statute outlaws the creation of jurisdiction where a party has been improperly or collusively made or joined to invoke the jurisdiction of the court. While the statute does not ban the appointment of nonresident fiduciaries, the artificial selection of a straw representative who has no duty or function except to offer the use of his citizenship to create diversity in contemplated litigation is a violation of its provisions. This is made clear by the knowledge that the appointing court normally would not have designated him because of his absence from the jurisdiction and the consequent limitation of its control over him, all of which can be put aside because there is at the time of appointment nothing for him to administer and he is not expected to exercise any real function.

McSparran v. Weist, 402 F.2d 867, 874, 875.

█ The conclusion is that the Fourth Circuit now frowns on the forum shopping practiced by invoking federal jurisdiction through artificial or collusive means. Whether the brows of that mighty court will, at some latter date, be furrowed by concern over forum avoidance by the same practices this court does not predict. *Mecom* thus illustrates the difference in judicial philosophy. When the artificial or collusive creation is used to invoke jurisdiction, it falls within the condemnation of 28 U.S.C.A. Section 1359. When it is used to defeat diversity jurisdiction, the motive will not be inquired into, and absent some Act of Congress not presently foreseeable, the federal court will not look behind the appointment for the purpose of grasping jurisdiction. This, of course, in no way preempts the state courts.

This court finds solace and guidance in the language of Heape v. Sullivan, 233 F.Supp. 127, 128 (E.D.S.C.1964):

While the Court does not look with favor or condone some of the matters asserted by defendant and substantiated by the record in this case, in reference to prior transactions between the plaintiff, E. H. Howe, and plaintiffs' attorneys, it cannot in this particular case say that the assignment of the one-one hundredth [1/100th] interest to plaintiff, E. H. Howe, by the plaintiff, G. Edward Heape, was not bona fide and was not made in good faith. A properly executed assignment was presented to the Court, and the allegations of the Complaint negatived diversity of citizenship, upon which Federal Jurisdiction was predicated in this case. There is nothing before the Court in this case to indicate that the particular assignment involved here was not valid, bona fide and made in good faith. The Courts have repeatedly held that causes of action for tort due to personal injury are assignable in South Carolina. Bultman, et al. v. Atlantic Coast Line Railroad Company, 103 S.C. 512, 88 S.E. 279 (1950); Doremus v. Atlantic Coast Line Railroad Company, 242 S.C. 123, 130 S.E. 370 (1963); Ridgeland Box Mfg. Co. v. Sinclair Ref. Co., 82 F. Supp. 274 (E.D.S.C.1949). This case was cited with approval by the South Carolina Supreme Court in Ridgeland Box Mfg. Co. v. Sinclair Ref. Co., 216 S.C. 20, 56 S.E.2d 585 (1949). Hair v. Savannah Steel Drum Corp., 161 F. Supp. 654 (E.D.S.C.1955), in which Judge Timmerman disagreed with the results reached by Judge Hoffman in Lisenby v. Patz, 130 F.Supp. 670 (E.D. S.C.1955), the latter case holding that the assignment of a personal injury claim was not valid in South Carolina; Roger T. Cook and Sol Blatt, Jr. v. Glen Falls Indemnity Co. C/A #5145, Aiken Div.E.D.S.C. Sept. 23, 1955 [not reported]; and the fact that the

**152**

assignment was made to defeat Federal Jurisdiction does not in-invalidate the assignment.

After all, it is rather old-fashioned, but this court is a court of *stare decisis*.

Plaintiff's motion is granted. This cause is remanded to the Court of Common Pleas for Lancaster County, South Carolina. The Clerk of this court will proceed accordingly.

And it is so ordered.